IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

FILED

**April 23, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-1036

STATE OF WEST VIRGINIA EX REL. BRYAN D. THOMPSON,
Petitioner

v.

THE HONORABLE JOSEPH C. POMPONIO, JUDGE OF THE CIRCUIT COURT OF
POCAHONTAS COUNTY and EUGENE M. SIMMONS, PROSECUTING
ATTORNEY FOR POCAHONTAS COUNTY, WEST VIRGINIA,
Respondents

PETITION FOR WRIT OF PROHIBITION

WRIT GRANTED

Submitted: February 12, 2014
Filed: April 23, 2014

J. Steven Hunter, Esq.
Steven Hunter Associates, l.c.
Lewisburg, West Virginia
Attorney for Petitioner Bryan D.
Thompson

Robert P. Martin, Esq.
Assistant Prosecuting Attorney
Marlinton, West Virginia
Attorney for Respondent Eugene M.
Simmons

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, [this] appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of power is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue." Syl. Pt. 2, *Woodall v. Laurita*, 156 W.Va. 707, 195 S.E.2d 717 (1973).

2. "'In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five

factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.' Syllabus Point 4, *State ex. rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996)." Syl. Pt. 2, *State ex. rel. Weirton Med. Ctr. v. Mazzone*, 214 W.Va. 146, 587 S.E.2d 122 (2002).

3.    Due to the significant constitutional rights that a criminal defendant waives in connection with the entry of a guilty plea, the burden of insuring both precision and clarity in a plea agreement is imposed on the State.  Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant.

4.    "'A prosecuting attorney or his successor is bound to the terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts to his substantial detriment in reliance thereon.'  Syllabus, *State ex rel. Gray v. McClure*, 161 W.Va. 488, 242 S.E.2d 704 (1978)."  Syl. Pt. 2, *State v. Palmer*, 206 W.Va. 306, 524 S.E.2d 661 (1999).

5.    "When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party."  Syl. Pt. 4, *State v. Myers*, 204 W.Va. 449, 513 S.E.2d 676 (1998).

LOUGHRY, Justice:

The petitioner, Bryan D. Thompson, invokes this Court's original jurisdiction[1] by seeking a writ of prohibition to prevent his prosecution on charges of breaking and entering and grand larceny. The petitioner contends that those charges were previously dismissed pursuant to a court-approved plea agreement. For the reasons set forth below, we grant the requested writ.

## I. Factual and Procedural Background

In October of 2007, the petitioner was indicted by a Pocahontas County grand jury in a case numbered 07-F-14 (hereinafter "Case No. 07-F-14"). Count I of the indictment charged him with conspiracy to commit a felony in violation of West Virginia Code § 61-10-31 (2010), and Count III charged him with delivery of a controlled substance in violation of West Virginia Code § 60A-4-401 (2010), both felony offenses.[2] The State represents that after the petitioner was indicted, he was "at large" for a period of years until he was located in Florida, arrested, and returned to the State of West Virginia.

---

[1]*See* W.Va. Const. art. VIII, § 3.

[2]Two co-defendants were also named in the indictment. Counts II and IV were directed solely as to those individuals.

1

Following the petitioner's return to West Virginia, he was charged in a magistrate court criminal complaint with breaking and entering in violation of West Virginia Code § 61-3-12 (2010) in a case numbered 11-F-12 (hereinafter "Case No. 11-F-12") and grand larceny in violation of West Virginia Code § 61-3-13(a) (2010) in a case numbered 11-F-13 (hereinafter "Case No. 11-F-13"). These charges, which arose out of an incident involving Sharp's Store located in Pocahontas County, were bound over to the grand jury following the petitioner's waiver of his right to have a preliminary hearing.[3]

More than a year later, the petitioner entered into a plea agreement with the State through then Pocahontas County Prosecuting Attorney, Donna Price ("Ms. Price"). The plea agreement provided that the petitioner would plead guilty to conspiracy to commit a felony, as charged in Count I of Case No. 07-F-14, and the State would dismiss "the pending charge of Breaking and Entering against the defendant[] & Count 3 of the indictment. (Delivery)[.]"[4] The plea agreement further provided that the State would not oppose the petitioner's request for credit for time served or a future motion for parole.

---

[3]Although it appears that these charges were never presented to a grand jury, the appendix record reflects that they were assigned new "bound over" case numbers: 11-B-107 and 11-B-108. For purposes of this opinion, we refer to these charges by their magisterial case numbers.

[4]Because Count III of the indictment in Case No. 07-F-14 is referred to as "Count 3" in the plea agreement and elsewhere in the appendix record, hereinafter, we use the same manner of reference.

2

On July 26, 2012, a plea hearing was held before the circuit court during which Ms. Price moved to dismiss "Count 3 . . . of 07-F-14, and the outstanding **pending matter** of the breaking and entering. Case number**s** have not been assigned . . . ."[5] (emphasis added.). The circuit court accepted the petitioner's guilty plea to Count I of Case No. 07-F-14 and then stated it was dismissing "the pending breaking and entering charge against the defendant in Count 3 of the indictment from the active docket."[6] The petitioner agreed to waive the pre-sentence report and requested the circuit court to proceed with sentencing. The circuit court accepted the waiver, sentenced the petitioner to one to five years in prison for the conspiracy to commit a felony, and suspended the sentence. That same day, the circuit court issued an "Amended Order Discharging Defendant From Further Jail and Granting Him Immediate Release" ("Amended Order"). The Amended Order states that "[t]he pending matters in Pocahontas County, to wit: 11-F-12 [breaking and entering] and 11-F-13 [grand larceny] ha[d] been dismissed upon the

---

[5]We find Ms. Price's choice of words to be instructive, as more fully discussed, *infra.*

[6]In making this statement, the circuit court mistakenly believed that Count 3 was the breaking and entering charge, when in fact, Count 3 was the delivery of a controlled substance charge in Case No. 07-F-14. The breaking and entering was the charge in Case No. 11-F-12.

States [*sic*] Motion[;]"[7] it further provided for the petitioner's immediate discharge from custody.[8]

In January of 2013, the respondent, Eugene Simmons (hereinafter "Mr. Simmons"), assumed the office of prosecuting attorney for Pocahontas County. Based on his concerns regarding the work of Ms. Price, his predecessor in office, Mr. Simmons undertook a review of the cases prosecuted by Ms. Price during her tenure. In conducting that review, Mr. Simmons observed that the petitioner's plea agreement did not identify the breaking and entering charge by case number, did not mention the grand larceny charge, and did not specify whether the dismissal of charges was with prejudice. On April 18, 2013, Mr. Simmons presented the charges arising out of the incident involving Sharp's Store to a grand jury; an indictment was returned against the petitioner for entry of a building in violation of West Virginia Code § 61-3-12 and grand larceny in violation of West Virginia Code § 61-3-13(a) in a case numbered 13-F-06 (hereinafter "Case No. 13-F-06").

---

[7]Although the plea agreement states that Count 3 (delivery of a controlled substance) was to be dismissed, which was echoed by Ms. Price during the plea hearing, the circuit court's Amended Order is silent as to Count 3.

[8]The petitioner states that as of the July 2012 plea hearing, he had spent thirteen months in jail. Upon his release, he was placed on probation.

The petitioner states that on May 1, 2013, he filed a motion to quash[9] the indictment in Case No. 13-F-06 on the grounds that the underlying charges were dismissed as part of the plea agreement that had been accepted and approved by the circuit court on July 26, 2012. The State opposed the motion on the basis that the plea agreement lacked specificity regarding the breaking and entering charge[10] and was silent on the issue of whether the dismissal of the charges was with prejudice. On June 19, 2013, the circuit court denied the motion to quash during its hearing on the motion.[11]

On or about July 15, 2013, the petitioner filed a renewed motion to quash and a motion for specific performance of the plea agreement. Arguing that he had upheld his end of the plea agreement and that the State was similarly bound to do the same, the petitioner maintained that he could not be indicted on charges that had been dismissed by the circuit court pursuant to that agreement. In response, the State reasserted the lack of specificity in the plea agreement regarding the charges being dismissed, as well as the absence of language to indicate that the dismissal of charges was with prejudice. The

---

[9]Motions to quash were abolished under Rule 12(a) of the West Virginia Rules of Criminal Procedure. The appendix record reflects that the circuit court treated the petitioner's motion to quash as a motion to dismiss.

[10]Mr. Simmons represents in his response to the petition before this Court that the State is no longer seeking to prosecute the petitioner for the alleged violation of West Virginia Code § 61-3-12.

[11]The hearing transcript reflects the circuit court's ruling in this regard. A corresponding order reflecting this ruling is not included in the appendix record.

5

circuit court denied the petitioner's motions, finding no mention of the term "with prejudice" in the plea agreement. Thereafter, the petitioner filed his petition for a writ of prohibition with this Court seeking to prevent his prosecution in Case No. 13-F-06 and to procure his immediate discharge from custody.

## II. Standard for Issuance of Writ of Prohibition

The petitioner argues that the circuit court abused its legitimate powers by denying his motion to quash the indictment and for specific performance of the plea agreement. Because the petitioner seeks to prohibit the circuit court from abusing its legitimate powers, the following standard applies:

> Where prohibition is sought to restrain a trial court from the abuse of its legitimate powers, rather than to challenge its jurisdiction, the appellate court will review each case on its own particular facts to determine whether a remedy by appeal is both available and adequate, and only if the appellate court determines that the abuse of powers is so flagrant and violative of petitioner's rights as to make a remedy by appeal inadequate, will a writ of prohibition issue.

Syl. Pt. 2, *Woodall v. Laurita*, 156 W. Va. 707, 195 S.E.2d 717 (1973). This Court enumerated the following factors that are to be considered when deciding whether to issue a writ of prohibition in these circumstances:

> "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain

6

the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W.Va. 12, 483 S.E.2d 12 (1996).

Syl. Pt. 2, *State ex. rel. Weirton Med. Ctr. v. Mazzone*, 214 W.Va. 146, 587 S.E.2d 122 (2002). With this standard in mind, we consider the merits of the petitioner's request for a writ of prohibition.

### III. Discussion

The petitioner asserts that pursuant to his court-approved plea agreement, he pled guilty to the felony offense of conspiracy to commit a felony in exchange for the State's agreement to dismiss all other charges pending against him: the delivery of a controlled substance in Count 3 (Case No. 07-F-14), as well as the bound-over charges of breaking and entering (Case No. 11-F-12) and grand larceny (Case No. 11-F-13). Maintaining that he has not violated any terms of the plea agreement, the petitioner seeks to enforce the terms of that agreement so as to obtain the benefit of his bargain. In contrast, Mr. Simmons argues that the plea agreement only references a charge of

7

"breaking and entering," rather than a violation of West Virginia Code § 61-3-12 as charged in Case No. 11-F-12,[12] and that there is no mention of the grand larceny charge. He also maintains that because the plea agreement did not indicate the dismissal of charges was with prejudice, the petitioner could be indicted on those charges.

Upon our review of the appendix record, we find the subject plea agreement to be ambiguous and deficient in its construction. Instead of clearly identifying the charges being dismissed in exchange for the petitioner's guilty plea, the agreement simply provides that the State will dismiss the "pending charge of Breaking and Entering" and "Count 3 of the indictment. (Delivery)[.]"[13] Further, the agreement does not mention the pending grand larceny charge (Case No. 11-F-13). These drafting deficiencies can be

[12]Mr. Simmons appears to question whether the plea agreement's reference to "breaking and entering" contemplates the criminal complaint in Case No. 11-F-12, which charged the petitioner with a violation of West Virginia Code § 61-3-12. This statute provides, in part:

> If any person shall, at any time, break and enter . . ., or shall enter without breaking, any . . . storehouse . . . or any . . . building . . . with intent to commit a felony or any larceny, he or she shall be deemed guilty of a felony . . . .

W.Va. Code § 61-3-12. Not only does the statute itself use the words "break and enter," as set forth above, but this Court has used the term "breaking and entering" when addressing this statute. *See, e.g., State v. Zacks*, 204 W.Va. 504, 513 S.E.2d 911 (1998) (discussing charges under § 61-3-12 as "breaking and entering" and noting existence of lesser included offense of entering without breaking).

[13]The delivery offense is arguably identifiable from other language in the plea agreement indicating that the petitioner was indicted for delivery of a controlled substance.

8

traced to Ms. Price's written work product, which Mr. Simmons describes as "defective, [and] replete with typing and grammatical errors . . . ." The lack of precision in the plea agreement was perpetuated by the State during the plea hearing when Ms. Price moved to dismiss "Count 3 . . . of 07-F-14, and the outstanding **pending matter** of the breaking and entering[,] and added that "[c]ase number**s** have not been assigned . . . ." (emphasis added.).[14] This lack of precision appears to be entirely consistent with what Mr. Simmons describes as "[t]he ineptitude and incompetence of Donna Price [as] seen in just about every single file in the [prosecutor's] office."[15] Further, Ms. Price's "systematic practice of . . . plea bargaining multiple felonies to single felony pleas[,]" as alleged by Mr. Simmons, supports the petitioner's argument that the subject plea agreement allowed him to plead guilty to one felony in return for which the State would dismiss the remaining felony charges pending against him.

---

[14]Ms. Price's reference to the "pending matter" and to "case numbers" were arguably intended as a cumulative reference to the charges arising out of the incident at Sharp's Store, which included both breaking and entering and grand larceny; otherwise, one might expect her to have used the words pending "*charge*," not pending "*matter*," and case "number," instead of case "numbers."

[15]Notwithstanding the deficiencies and ambiguities described herein, as indicated previously, the circuit court ultimately understood that the State was dismissing both the breaking and entering *and* the grand larceny charges under the terms of the plea agreement, as reflected in its Amended Order, which states: "The pending matters in Pocahontas County [against the petitioner], to wit: 11-F-12 [breaking and entering] and 11-F-13 [grand larceny] having been dismissed upon the States [*sic*] Motion." Although Mr. Simmons states "[t]here is nothing in the record anywhere which relates to the dismissal of a Grand Larceny charge[,]" he ignores Ms. Price's statement during the plea hearing that arguably encompasses that charge, as well as the circuit court's Amended Order.

9

Having determined the plea agreement to be ambiguous, the question we must resolve is whether the State should reap the benefit of its deficient drafting and be allowed to prosecute the petitioner for offenses he understood were dismissed under the plea agreement. In *State ex rel. Forbes v. Kaufman*, 185 W.Va. 72, 404 S.E.2d 763 (1991), this Court addressed the issue of ambiguity in a plea agreement. After approving the plea agreement and accepting the defendant's guilty plea, the circuit court imposed a sentence more lenient than provided for in the plea agreement, which prompted the State to seek to vacate both the plea and the defendant's sentence. In analyzing the agreement's ambiguity as to sentencing, this Court observed that

> [t]he Fourth Circuit, in *United States v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986), recognized that "both constitutional and supervisory concerns require holding the Government to a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements." The Fourth Circuit further stated that "[t]his is particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement-for the same reasons that dictate that approach in interpreting private contracts." *Id.* at 301.

*Forbes*, 185 W.Va. at 77, 404 S.E.2d at 768.

In *Harvey*, the Fourth Circuit stated that

> [i]n the process of determining whether disputed plea agreements have been formed or performed, courts have necessarily drawn on the most relevant body of developed rules and principles of private law, those pertaining to the formation and interpretation of commercial contracts. *See generally* Westen & Westin, *A Constitutional Law of*

10

> *Remedies for Broken Plea Bargains,* 66 Calif.L.Rev. 471 (1978) (analyzing cases in these terms). But the courts have recognized that those rules have to be applied to plea agreements with two things in mind which may require their tempering in particular cases. First, the defendant's underlying "contract" right is constitutionally based and therefore reflects concerns that differ fundamentally from and run wider than those of commercial contract law. *See Mabry v. Johnson,* 467 U.S. at 509, 104 S.Ct. at 2548 (broken government promise that induced guilty plea implicates due process clause because it impairs voluntariness and intelligence of plea). Second, with respect to federal prosecutions,[16] the courts' concerns run even wider than protection of the defendant's individual constitutional rights-to concerns for the "honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." *United States v. Carter*, 454 F.2d 426, 428 (4th Cir.1972).

*U.S. v. Harvey*, 791 F.2d 294, 300 (4th Cir.1986) (footnote added.). Due to the concern for constitutional rights, as well as the supervisory role of government, the Fourth Circuit found that the government must bear "a greater degree of responsibility than the defendant . . . for imprecisions or ambiguities in plea agreements." *Id.* This added burden is "particularly appropriate where, as will usually be the case, the Government has proffered the terms or prepared a written agreement–for the same reasons that dictate that approach in interpreting private contracts." *Id.* at 301.[17]

---

[16]Although the Court in *Harvey* frames this second factor in terms of federal prosecutions, these stated concerns are equally applicable to state prosecutions.

[17]As we similarly explained in *State ex rel. Gardner v. W. Va. Div. of Corr.*, 210 W.Va. 783, 786, 559 S.E.2d 929, 932 (2002),

(continued...)

11

Relying upon *Harvey* in *Forbes*, we found that because the plea agreement was ambiguous as to sentencing, the State should not be permitted to benefit from its own lack of oversight, particularly in view of the significant liberty interests and constitutional rights waived by a defendant who enters into a plea agreement. As this Court explained,

> [w]e agree with the Fourth Circuit's observation [in *Harvey*] that *the state must insure that the terms of a plea agreement are clear and exact*. The defendant waives significant constitutional rights by entering into a plea agreement, such as the right to examine and confront witnesses who would testify against the defendant, the privilege against compulsory self-incrimination, the presumption of innocence, and the right to a speedy trial. Although we recognize that the state surrenders certain prosecutorial prerogatives when it enters into a plea agreement, we believe that *a defendant's waiver of his or her constitutional rights outweighs the state's foregoing of its right to prosecute*.

*Forbes,* 185 W.Va. at 77, 404 S.E.2d at 768 (emphasis added). Accordingly, we concluded that

> the state bears the primary responsibility for insuring precision and unambiguity in a plea agreement because of the significant constitutional rights the defendant waives by entering a guilty plea. If a plea agreement is imprecise or

---

[17](...continued)

> "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 192, 465 S.E.2d 185, 192 (1995). Such agreements require "ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the defendant's right to fundamental fairness[.]" *State v. Myers*, 204 W.Va. 449, 458, 513 S.E.2d 676, 685 (1998).

12

ambiguous, such imprecision or ambiguity will be construed in favor of the defendant.

*Id.*; *see also State v. Hayhurst*, 207 W.Va. 259, 531 S.E.2d 324 (2000). Likewise, an overwhelming majority of our sister states construe ambiguous plea agreements in favor of the defendant and against the State. *See*, *e.g.*, *Humphrey v. State*, 686 So.2d 560, 562 (Ala.Crim.App.1996) (stating ambiguous plea agreement must be read against the government); *Keller v. People,* 29 P.3d 290, 297 (Colo. 2000) (finding ambiguous terms of plea agreement must be construed in favor of defendant and against government); *State v. Adams*, 982 A.2d 187, 191 (Conn.App. 2009) (recognizing that any ambiguity in plea agreement should be construed against state); *Stedman v. District of Columbia*, 12 A.3d 1156, 1158 (D.C.App. 2011) ("The court will construe any ambiguity [in a plea agreement] against the government."); *State v. Abbott*, 901 P.2d 1296, 1299 (Haw.Ct.App. 1995) (strictly construing ambiguous terms in plea agreement in favor of defendant); *State v. Hurles*, No. 39219, 2014 WL 185977, at *7 (Idaho App. Jan. 17, 2014) ("[A]mbiguities are construed in favor of the defendant. Focusing on the defendant's reasonable understanding also reflects the proper constitutional focus on what induced the defendant to plead guilty."); *Valenzuela v. State*, 898 N.E.2d 480, 482-83 (Ind. App. 2008) ("We construe any contract ambiguity against the party who drafted it, which, in the case of plea agreements, is the State."); *State v. Wills*, 765 P.2d 1114, 1120 (Kan.1988) (finding plea agreement that is reasonably susceptible to different interpretations is ambiguous and must be strictly construed in favor of defendant); *Elmore*

13

*v. Comm.*, 236 S.W.3d 623, 627-28 (Ky.App.2007) ("[W]hen a contract is [reasonably] susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it[;]" "this rule should . . . be [applied] to plea agreements."); *State v. Leyba*, 204 P.3d 37, 42 (N.M. 2009) (finding plea agreements are to be viewed and enforced in their entirety with ambiguities construed in defendant's favor); *State v. Bethel*, 854 N.E.2d 150, 167 (Ohio 2006) (construing ambiguous terms in plea agreement against State); *Com. v. Hainesworth*, 82 A.3d 444, 447 (Pa.Super.Ct. 2013) (finding ambiguous terms of plea agreement will be construed against Commonwealth); *State v. Mellon*, 118 S.W.3d 340, 347 (Tenn. 2003) ("Because the provisions of any plea agreement are largely dictated by the State, and because of the substantial constitutional interests implicated by plea agreements, the State must bear the risk for any lack of clarity in the agreement, and ambiguities should be resolved in favor of the defendant.").[18]

---

[18]Similarly, federal courts construe ambiguous plea agreements in favor of defendants and against the government. *See, e.g., U.S. v. Isom*, 580 F.3d 43, 51 (1st Cir. 2009) ("Under the basic contract principles which we apply to the construction of plea agreements, we construe such ambiguities against the government."); *U.S. v. Difeaux*, 163 F.3d 725, 728 (2d Cir. 1998) (recognizing ambiguous terms of plea agreement are construed against government); *U.S. v. Williams*, 510 F.3d 416, 422 (3d Cir. 2007) ("[A]ny ambiguities in a plea agreement must be construed against the government."); *U.S. v. Sibley*, 448 F.3d 754, 759 (5th Cir. 2006) (stating all ambiguities in plea agreement must be construed against government); *U.S. v. Bowman,* 634 F.3d 357, 360 (6th Cir. 2011) ("[A]mbiguities in a plea agreement are . . . construed against the government, especially because the government can take steps in drafting a plea agreement to avoid imprecision."); *U.S. v. Munoz*, 718 F.3d 726, 729 (7th Cir. 2013) (construing ambiguities in plea agreement against government as drafter); *U.S. v. Andis*, 333 F.3d 886, 890 (8th Cir. 2003) (reading ambiguities in plea agreements against government); *U.S. v. De la Fuente*, 8 F.3d 1333, 1337-38 n.7 (9th Cir. 1993) ("The construction we adopt . . . incorporates the general rule that ambiguities are construed in

(continued...)

In consideration of our decision in *Forbes*, as well as the overwhelming consensus among state and federal courts alike, we now hold that due to the significant constitutional rights that a criminal defendant waives in connection with the entry of a guilty plea, the burden of insuring both precision and clarity in a plea agreement is imposed on the State. Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant.

Applying our holding to the case at bar, we find that the State should not be permitted to benefit from its own lack of oversight and drafting deficiencies, particularly in view of the significant liberty interests and constitutional rights waived by the petitioner when he entered into the plea agreement. Instead, the State's heightened responsibility as the drafter of the subject plea agreement requires us to construe the agreement's ambiguities in the petitioner's favor and against the State. In doing so, we find that in exchange for the petitioner's guilty plea to the felony offense of conspiracy to commit a felony, the State agreed to dismiss the other charges then pending against the

[18](...continued)
favor of the defendant. Focusing on the *defendant's* reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty." (emphasis in original)); *U.S. v. Cachucha*, 484 F.3d 1266, 1270 (10th Cir. 2007) (construing ambiguities against government as drafter of document and interpreting agreement according to defendant's reasonable understanding of its terms); *U.S. v. Jefferies*, 908 F.2d 1520, 1523 (11th Cir.1990) (finding ambiguous plea agreements must be construed against government); *In re Sealed Case*, 702 F.3d 59, 63 n.2 (D.C. Cir. 2012) (requiring ambiguity in plea agreement to be construed against government as drafting party).

petitioner: Count 3 (delivery of a controlled substance) in Case No. 07-F-14; the breaking and entering in Case No. 11-F-12; and the grand larceny in Case No. 11-F-13. Our construction is supported by Mr. Simmons's reference to Ms. Price's "systematic practice" to "plea bargain[] multiple felonies to single felony pleas[.]" Although Mr. Simmons argues, and the circuit court ruled, that the State is permitted to prosecute the petitioner on the dismissed charges because the plea agreement does not contain the words "with prejudice," we disagree. Indeed, it would defy logic to conclude that the petitioner agreed to plead guilty to a felony in exchange for the State's promise to forego–*only temporarily*–its prosecution of him on the other pending charges. This is particularly true in the absence of any evidence before us to the contrary.[19] We consider the absence of these words to be yet another deficiency in the drafting of the plea agreement under the facts and circumstances of this case and, under our ruling herein, any resulting ambiguity in this regard is required to be construed in the petitioner's favor and against the State.

In a similar vein, we further find that Mr. Simmons is bound by his predecessor's plea agreement. Although he contends there has been a "changing of the guard" in the prosecutor's office, we have long held that "'[a] prosecuting attorney or his successor is bound to the terms of a plea agreement once the defendant enters a plea of

_____

[19]Mr. Simmons offers only his disapproval of his predecessor's decision in this regard, which does not constitute evidence.

16

guilty or otherwise acts to his substantial detriment in reliance thereon.'  Syllabus, *State*

*ex rel. Gray v. McClure*, 161 W.Va. 488, 242 S.E.2d 704 (1978)." Syl. Pt. 2, *State v.*

*Palmer*, 206 W.Va. 306, 524 S.E.2d 661 (1999); *see also State v. Spade*, 225 W.Va. 649,

695 S.E.2d 879 (2010); *State v. Cook*, 184 W.Va. 625, 403 S.E.2d 27 (1991); *Sellers v.*

*Broadwater*, 176 W.Va. 232, 342 S.E.2d 198 (1986).  Moreover, "[w]hen a defendant

enters into a valid plea agreement with the State that is accepted by the trial court, an

enforceable 'right' inures to both the State and the defendant not to have the terms of the

plea agreement breached by either party."  Syl. Pt. 4, *State v. Myers*, 204 W.Va. 449, 513

S.E.2d 676 (1998).[20]  Consequently, because the subject plea agreement was accepted by

the circuit court and the petitioner fulfilled his part of the plea agreement, Mr. Simmons

cannot now breach that agreement under the guise of Ms. Price's alleged general

ineptitude during her tenure as prosecutor.

Finally, we turn to the matter of the extraordinary relief being sought by the

petitioner and conclude that a writ of prohibition is appropriate under the factors

enumerated in *Mazzone*.   Syl. Pt. 2, 214 W.Va. at 148, 587 S.E.2d at 124.  We find that

the circuit court exceeded its legitimate authority in allowing the instant prosecution to

proceed through its denial of the petitioner's motion to quash and seeking specific

performance of the subject plea agreement, as reflected in its order entered on August 5,

---

[20]Mr. Simmons does not challenge the validity of the plea agreement; he simply has a different interpretation of its terms.

17

2013.[21]

## IV. Conclusion

For the foregoing reasons, we find that the petitioner is entitled to relief in prohibition and that immediate relief from this Court is appropriate given his current custodial incarceration. Accordingly, the circuit court's August 5, 2013, order denying the petitioner's motion to quash and for specific performance is vacated and the circuit court is instructed to enter an order dismissing Case No. 13-F-06 with prejudice. The circuit court is further instructed to ascertain whether the petitioner's present incarceration is occasioned solely by the indictment in Case No. 13-F-06 and, if so, to enter an order discharging the petitioner from custody. The mandate of this Court shall issue forthwith.

Writ granted.

---

[21]We acknowledge that the withdrawal of a guilty plea can be an appropriate remedy for the State's breach of a plea agreement. Here, however, specific performance of the agreement is warranted where the petitioner cannot be restored to the position he occupied prior to the plea agreement. *See* Syl. Pt. 3, *State v. Conley,* 168 W.Va. 694, 285 S.E.2d 454 (1981) ("'When a court cannot restore a defendant to his position before a plea bargain was performed by him and breached by the state, he is entitled to specific performance of the bargain by the state.' *Brooks v. Narick*, 161 W.Va. 415, 243 S.E.2d 841 (1978).").

18