**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Modesto Guerrero,**
**Petitioner Below, Petitioner**

**v.)  No. 23-27** (Kanawha County 18-P-167)

**Russell Maston, Superintendent,**
**Saint Marys Correctional Center,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Modesto Guerrero appeals the Circuit Court of Kanawha County's December 7, 2022, order denying his petition for a writ of habeas corpus.[1] Here, the petitioner argues that the State breached the plea agreement. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision is appropriate. *See* W. Va. R. App. P. 21(c).

The petitioner, a Cuban citizen, came to the United States in 1980. He was initially detained by the Immigration and Naturalization Service due to his criminal history but was released on parole. In January 1996, while on parole, the petitioner was indicted on one count of first-degree murder and one count of felony malicious assault for killing his girlfriend and shooting, stabbing, and cutting her daughter.

In November 1996, the petitioner and the State entered into a plea agreement whereby the petitioner agreed to plead guilty to first-degree murder and to plead guilty to a recidivist information the State intended to file with regards to the malicious assault charge. In exchange, the State agreed to recommend that the petitioner be sentenced to life with mercy on the murder charge and to life on the recidivist count and to recommend that the sentences be served concurrently. The circuit court accepted the petitioner's plea and, by order dated November 7, 1996, sentenced the petitioner to concurrent terms of life with mercy on the murder count and life on the recidivist count.

On February 11, 1997, the Parole Board sent a questionnaire to one of the assistant prosecutors in the case, advising him that the petitioner would become eligible for parole in

---

[1] The petitioner appears by counsel John Sullivan and George Castelle. The respondent appears by Attorney General Patrick Morrisey and Assistant Attorney General Mary Beth Niday. Since the filing of this case, the petitioner has been transferred from Denmar Correctional Center to Saint Marys Correctional Center. Accordingly, the Court has made the necessary substitution of parties pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure.

January 2011 and inquiring of the State's position on the matter. The assistant prosecutor completed and returned the questionnaire, indicating his belief that the petitioner should not be granted parole and requesting to be notified when the petitioner became eligible for parole.

The petitioner subsequently appeared before the Parole Board on three occasions, in 2010, 2017, and 2020. Prior to both the 2010 and 2017 parole hearings, the Kanawha County Prosecutor's Office opposed the petitioner's release on parole, citing the seriousness of the crime and stating "[h]e should never be paroled."[2] Each time, the Parole Board denied the petitioner parole. The Parole Board noted some factors in favor of granting the petitioner parole, including that, as of that date, he had not had any documented disciplinary issues during his incarceration. However, the Parole Board noted several negative factors including the petitioner's criminal history, the nature of the underlying crime, the fact that the petitioner had committed the underlying crime while on parole, risk assessments, a lack of community support, an ongoing propensity for violence, and community and official sentiment.

In the meantime, the petitioner sought the appointment of counsel to obtain advice on the effect of his guilty plea on his immigration status. The circuit court granted the petitioner counsel for the purpose of determining any immigration ramifications and related post-conviction relief. Thereafter, the petitioner's counsel filed a memorandum with the circuit court indicating his belief that no ineffective assistance of counsel had occurred with regard to the petitioner's immigration status. However, counsel believed that the State had breached the plea agreement by opposing parole at the petitioner's 2010 and 2017 parole hearings. Accordingly, counsel filed a petition for a writ of habeas corpus in the circuit court, arguing that the State's conduct constituted a breach because it "undermin[ed] . . . the agreement to recommend mercy." In later briefing, the petitioner noted that his plea hearing was not recorded or adequately preserved for review. Accordingly, the petitioner also claimed that the lack of transcript or recording of his plea colloquy meant that the intent of the plea agreement could not be discerned and that, as such, the matter should be resolved in his favor.

By order dated December 7, 2022, the circuit court denied the petition. The court set forth the terms of the plea agreement and found that it was "undisputed that the State recommended that Petitioner be granted mercy in connection with his plea and life sentences as expressly stated in the plea agreement." The court further found that the "plea agreement is silent, and contains no terms, with regard to the State standing silent at any potential parole hearings and, further, is silent as to the State's obligations after recommending mercy at the sentencing hearing." The court concluded that the State had fulfilled its duty to recommend mercy at sentencing and that its obligations under the plea agreement ended at sentencing. While the court expressed concern over the lack of transcript from the plea hearing, it determined that, under the express terms of the plea agreement, the State "did not breach the plea agreement as any implied terms or prohibition against statements before the parole board are not contained therein." Accordingly, the court denied habeas relief, finding no breach of the terms of the plea agreement. The petitioner now appeals.

---

[2] It does not appear as though the prosecutor opposed the petitioner's release on parole during the 2020 hearing.

This Court has set forth the following standard for review of a circuit court's denial of a petition for writ of habeas corpus:

> In reviewing challenges to the findings and conclusions of the circuit court in a habeas corpus action, we apply a three-prong standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review.

Syl. Pt. 1, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

With this standard in mind, we turn to the petitioner's sole assignment of error on appeal. The petitioner argues that the State breached the plea agreement by repeatedly opposing his eligibility for parole before the Parole Board. According to the petitioner, the plea agreement was ambiguous and, if interpreted to mean that the State's obligation to recommend mercy ended at sentencing, offered only the "illusion of a benefit." The petitioner contends that this ambiguity could have been resolved had the State properly preserved a record of the plea colloquy and that, given its failure to do so, he should be entitled to relief. We disagree.

This Court has long recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 185, 192 (1995). Regarding the interpretation of plea agreements, we have previously noted that any ambiguities in a plea agreement will be construed against the State. Syl. Pt. 3, *State ex rel. Thompson v. Pomponio*, 233 W. Va. 212, 757 S.E.2d 636 (2014). However, "a plea agreement should be read reasonably, without resort to strained or hyper-technical interpretation." *State v. Wilson*, 237 W. Va. 288, 293, 787 S.E.2d 559, 564 (2016) (citation omitted).

Keeping these principles in mind, we find that the State did not breach the clear terms of the plea agreement in this case. The language of the plea agreement is straightforward and unambiguous, and we need not look to extrinsic evidence, such as the plea colloquy, for interpretation.[3] As we have previously noted, "[t]he mere fact that parties do not agree to the construction of a contract does not render it ambiguous." Syl. Pt. 4, in part, *Mylan Laboratories*

---

[3] While we acknowledge that the failure to preserve the record of the petitioner's plea colloquy is concerning, because the language of the plea agreement is clear and unambiguous, review of the plea colloquy is unnecessary. *See* Syl. Pt. 4, in part, *Cabot Oil & Gas Corp. v. Huffman*, 227 W. Va. 109, 705 S.E.2d 806) (2010) (holding that "[a]n unambiguous written contract entered into as the result of verbal or written negotiations will, in the absence of fraud or mistake, be conclusively presumed to contain the final agreement of the parties to it, and such contract may not be varied, contradicted or explained by extrinsic evidence of conversations had or statements made contemporaneously with or prior to its execution."). Accordingly, insofar as the petitioner argues that he is entitled to relief because we are unable to review the plea colloquy, which he claims is necessary to interpret ambiguities in the plea agreement, we find that such argument is without merit.

*Inc. v. American Motorists Ins. Co.*, 226 W. Va. 307, 700 S.E.2d 518 (2010) (citation omitted). Here, the clear and plain terms of the plea agreement required that the State recommend that the petitioner be sentenced to life with mercy and to recommend that this sentence be served concurrently with his other sentences. It is undisputed that the State complied with these requirements during the sentencing hearing and, as such, fulfilled its obligation under the plea agreement. The petitioner can point to no language in the plea agreement that extends the State's obligation to recommend mercy beyond the sentencing hearing, and this Court has repeatedly rejected the notion that the State breached a plea agreement during post-conviction proceedings where the terms of the plea agreement were silent as to its obligations after sentencing. *See State v. Shackleford*, No. 21-0265, 2022 WL 3905242 (W. Va. Aug. 30, 2022) (memorandum decision) (finding that the State did not breach the plea agreement by opposing the defendant's Rule 35 motion when the terms of the plea agreement only provided that the State would stand silent at sentencing); *Shafer v. Pszczolkowski*, No. 17-0439, 2018 WL 798665 (W. Va. Feb. 9, 2018) (memorandum decision) (finding that the State fulfilled its obligation to recommend mercy at sentencing and, thus, did not breach the plea agreement when it argued in support of the circuit court's order sentencing the defendant to life without mercy on appeal). Therefore, we reject the petitioner's claim that the State breached the plea agreement by opposing his release on parole before the Parole Board.

For the reasons stated above, this Court affirms the December 7, 2022, final order of the Circuit Court of Kanawha County.

Affirmed.

**ISSUED:** May 7, 2024

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice C. Haley Bunn

**DISSENTING:**

Justice John A. Hutchison
Justice William R. Wooton

HUTCHISON, Justice, dissenting:

I dissent to the majority's resolution of this case. I would have set this case for oral argument to thoroughly address the error alleged in this appeal. Having reviewed the parties' briefs and the issues raised therein, I believe a formal opinion of this Court was warranted, not a memorandum decision. Accordingly, I respectfully dissent.

WOOTON, Justice, dissenting:

The majority opinion overlooks the State's recantation of its agreement with petitioner that it would recommend that he be sentenced to life with mercy. Given the heinous nature of petitioner's reprehensible criminal acts, the State's actions are understandable. Nonetheless, those actions fall far short of the standards expected of representatives of the State in criminal proceedings. Because I believe that the State breached its agreement with petitioner when it took the position that petitioner should never be paroled, and therefore should not be entitled to the possibility of parole that mercy affords, I must dissent.

The crux of petitioner's case is that the State agreed that if petitioner entered a guilty plea to the felony offense of first-degree murder that it would not merely stand silent at sentencing, it would affirmatively recommend that petitioner be sentenced to life with mercy on that charge. Petitioner signed a plea agreement specifying the State's obligation to make such a recommendation, entered a plea of guilty, and the court accepted that plea. Despite the State's affirmative agreement, it violated that agreement when it took the position during petitioner's parole hearings that petitioner should *never* be paroled.

The State's actions in this case smack of chicanery. If technically the plea agreement did not cover parole hearings (plea agreements rarely if ever do), nonetheless the actions of the prosecuting attorney's office are contrary to the spirit, or sense of the plea agreement, and are thus unfair. To agree to and then actually recommend mercy at a plea hearing and then appear at parole hearings in opposition to parole is duplicitous, notwithstanding that the plea agreement did not explicitly address parole hearings. Prosecutors must always seek justice; they have an affirmative duty to an accused to be fair. *See* Syl. Pt. 2, *State v. Britton*, 157 W. Va. 711, 203 S.E.2d 462 (1974) ("As the primary responsibility of a prosecuting attorney is to seek justice, his affirmative duty to an accused is fairness.") We have held that prosecuting attorneys are not merely advocates for the State:

> The prosecuting attorney occupies a quasi-judicial position in the trial of a criminal case. In keeping with this position, he is required to avoid the role of a partisan, eager to convict, and must deal fairly with the accused as well as the other participants in the trial. It is the prosecutor's duty to set a tone of fairness and impartiality, and while he may and should vigorously pursue the State's case, in so doing he must not abandon the quasi-judicial role with which he is cloaked under the law.

Syl. Pt. 3, *State v. Boyd*, 160 W. Va. 234, 233 S.E.2d 710 (1977). Here the prosecutor's actions were not guided by even a modicum of fairness in light of the State's previous agreement.

This Court has recognized that "[w]hen a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syl. Pt. 4, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998). Additionally, "[w]henever the State violates a sentencing neutrality provision of a plea agreement, the violation seriously affects the fairness,

5

integrity and public reputation of the proceeding." *Id.* at syl. pt. 8. To the extent that there is any ambiguity in petitioner's plea agreement, this should be construed against the State and in favor of petitioner. *See* Syl Pt. 3, in part, *State ex rel. Thompson v. Pomponio*, 233 W. Va. 212, 757 S.E.2d 636 (2014) ("[T]he burden of insuring both precision and clarity in a plea agreement is imposed on the State. Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant.")

The State's opposition to petitioner's application for parole is contrary to its agreement upon entry of the plea agreement. Further, it compromises the fairness and integrity of petitioner's sentencing and the entirety of the plea process. Since a plea agreement requires a defendant to waive fundamental rights, this Court has recognized that "we are compelled to hold prosecutors and courts to the most meticulous standard of both promise and performance." *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 185, 192 (1995). Here, the State's actions do not comport with the exacting standard that we announced in *Brewer*. And while I find petitioner's underlying criminal conduct abhorrent, I simply cannot turn a blind eye to the State's decision to – at a minimum – violate the spirit of its plea agreement with the petitioner.

Based on the foregoing, I respectfully dissent.