**FILED**

**May 18, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

JUSTICE TRUMP, concurring, in part, and dissenting, in part:

I concur with the majority's holding that the judgment of the Circuit Court of Jefferson County must be vacated and the case remanded to the circuit court for further proceedings. I write separately because I disagree with the majority on the question of what happens when a plea has been tendered to the court, but has not been accepted by the court.

The petitioner was indicted during the September 2002, term of court in Jefferson County for two offenses. Count I of the indictment was a charge of burglary, a felony, and Count II of the indictment was a charge of petit larceny, a misdemeanor. On February 21, 2003, the petitioner and the assistant prosecuting attorney appeared before the circuit court and advised the court that they had entered into a binding plea agreement. Unfortunately, the record does not contain a transcript of that hearing held twenty-three years ago, even though efforts were apparently made later to find or produce it. It appears also that there was no written plea agreement that was signed by the parties and tendered to the court at that time. Rather, it appears that at the February 21, 2003, hearing, the assistant prosecuting attorney and the petitioner's counsel verbally spread the terms of their plea agreement upon the record before the circuit court.[1]

At the February 21, 2003, hearing, the parties advised the circuit court that they had entered into a binding plea agreement under which: (1) the petitioner would plead

---

[1] What we know of what transpired at the hearing comes from the "PLEA PROPOSAL ORDER" that was entered by the circuit court on February 26, 2003, to memorialize the circuit court's rulings and actions at the hearing.

guilty to burglary, as charged in Count I of the indictment; (2) the petitioner would be sentenced to 1-15 years in the penitentiary; however, (3) the petitioner's penitentiary sentence would be suspended, and the petitioner would be placed upon supervised probation for five years; and (4) the State would dismiss the petit larceny charge (Count II of the indictment). As noted, this was proposed as a binding plea agreement under West Virginia Rule of Criminal Procedure 11(e)(1)(A) and (C), which meant that if the court accepted the agreement, the court was bound to sentence the petitioner in the manner upon which the State and the petitioner had agreed.

The circuit court inquired of the petitioner if the terms that had been recited to the court constituted the complete agreement between the parties, which the petitioner affirmed.

The circuit court did not then accept the parties' plea agreement. Specifically, the "PLEA PROPOSAL ORDER" provided as follows:

> Accordingly it is ORDERED and ADJUDGED that the Court does defer acceptance or rejection of said plea agreement.

Instead of accepting or rejecting the plea agreement, the court ordered the preparation of a presentence investigation and report by its probation office, and set the matter for a further hearing to be held on March 27, 2003, "at which time the Court will either accept or reject the Defendant's plea." The procedure followed by the circuit court was wholly consistent with Rule 11(e)(2), which, in pertinent part, provides:

> If the agreement is of the type specified in subdivision (e)(1)(A), (C), or (D), the court may accept or reject the

2

agreement, *or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report*.

(Emphasis added).

Also during the February 21, 2003, hearing, the court engaged the petitioner in the colloquy required by Rule 11(c) and (d) and *Call v. McKenzie*, 159 W. Va. 191, 220 S.E.2d 665 (1975). The assistant prosecuting attorney laid a factual basis for the plea and represented to the court that the victim and the investigating officer agreed with the proposed plea agreement. The petitioner then signed a written guilty plea form, which was tendered to the court, and which the court ordered to be filed by the clerk.

The question upon which I believe this case should turn is whether, in fact, the circuit court accepted the petitioner's guilty plea at the February 21, 2003, hearing. The record is extremely limited. As noted above, because we have no transcript of the hearing, all that we have to go on is the "PLEA PROPOSAL ORDER" that the circuit court entered five days later. That order states:

> Thereafter the Defendant, in open court, did enter a plea of guilty to BURGLARY, a felony offense as set forth in the Indictment and the Defendant executed a written guilty plea form witnessed by the Deputy Clerk of this Court and by his counsel and the same, being in proper form, is ORDERED filed herein.

What the order does not say is that the court had accepted petitioner's guilty plea. To the contrary, the PROPOSED PLEA ORDER goes on to state that

> this matter shall come on for further hearing on the 27th day of March, 2003, at 9:00 AM or as soon thereafter as this matter

3

may be called, at which time the Court *will either accept or reject the Defendant's plea*.

(Emphasis added).

As the majority correctly notes, a court may accept or reject a plea and a plea agreement together, or the court may accept a guilty plea, while deferring action upon the binding plea agreement. *U.S. v. Hyde*, 520 U.S. 670 (1997). In *Hyde*, the United States Supreme Court held that even though courts often treat acceptance or rejection of a plea agreement and guilty plea together, "[g]uilty pleas can be accepted while plea agreements are deferred, and the acceptance of the two can be separated in time." *Id.* at 674. The Supreme Court's decision in *Hyde* overruled other cases in which federal courts had held that when a defendant's guilty plea is part of a plea agreement, the guilty plea cannot be accepted until the plea agreement is accepted. *See, e.g.*, *U.S. v. Cordova-Perez*, 65 F.3d 1552 (9th Cir. 1995).

In *Hyde*, unlike the case before us, the district court had clearly "stated that it was accepting respondent's guilty plea. It also stated that it was deferring decision on whether to accept the plea agreement, pending completion of the presentence report." *Id.* at 672. The Supreme Court then said that allowing a defendant automatically to withdraw a plea once the court had accepted it "debases the judicial proceeding at which a defendant pleads and the court accepts his plea." *Id.* at 676.

The circumstances in this case are different from those considered in *Hyde*.

4

Although our record is scant and incomplete, it shows that the circuit court did not accept the petitioner's guilty plea on February 21, 2003. The only evidence that we have (the PLEA PROPOSAL ORDER) shows that the court *deferred* its decision as to whether it would accept or reject both the plea agreement and the guilty plea to the hearing it scheduled for March 27, 2003. Whether the petitioner's guilty plea was accepted by the court makes a difference.

Sometime after the hearing on February 21, 2003, the petitioner was arrested and incarcerated in Maryland, and he failed to appear at the March 27 hearing. The circuit court issued a capias for his arrest. However, the capias was not executed until almost twenty years later. On January 20, 2023, while driving from his home in Westminster, Maryland, to visit his son in Shepherdstown, Jefferson County, the petitioner was stopped by the Shepherdstown police for failing to come to a complete stop at a stop sign in Shepherdstown.[2] The officer executed the 20-year-old capias at that time, and the petitioner was incarcerated in the Eastern Regional Jail.

On April 17, 2023, a hearing was conducted where the unusual posture of the case was discussed among petitioner's counsel, the assistant prosecuting attorney, and the circuit court: that a binding plea agreement and guilty plea had been proposed to the court twenty years earlier, but which had not been accepted or rejected by the court. The

---

[2] The record suggests that the State had never caused the capias to be entered into the National Crime Information Center (NCIC) database, which would have alerted other jurisdictions of the outstanding warrant for the petitioner's arrest.

transcript of that hearing reveals that neither the petitioner nor the State desired that the circuit court accept the plea that had been tendered twenty years earlier or otherwise proceed based upon the binding agreement from 2003. Specifically, the parties acknowledged petitioner's inability to appear in Jefferson County while he was incarcerated in Maryland and further recognized that the petitioner had made important changes in his life during the intervening years. The hearing transcript also reveals that the parties and the circuit court actively discussed various possibilities of how the case might proceed, including withdrawal of the 2003 plea, rejection by the court of the plea, or even a pre-trial diversion agreement. Ultimately, however, the circuit court deferred resolution of the issue and set a subsequent hearing for May 31, 2023.

Before the next hearing, the prosecuting attorney and the petitioner entered into a new plea agreement. Under the new agreement, the petitioner would plead guilty to the offense of petit larceny (Count II of the indictment) and be sentenced in the discretion of the court,[3] with the State making a recommendation for community service that was not binding on the court. The new agreement further provided that the petitioner would be permitted to withdraw his guilty plea from 2003, and the State would dismiss the burglary charge. The parties tendered their new, signed agreement to the circuit court at the May 31, 2023, hearing. The court scheduled a change of plea hearing to be held on July 12, 2023, and ordered an updated, abbreviated pre-sentence report to be prepared in the interim.

---

[3] The sentence would be up to the statutory maximum of one year in jail and/or a fine of up to $2,500.00.

On July 12, 2023, the petitioner and the assistant prosecuting attorney appeared before the circuit court. The circuit court disregarded the new plea agreement, instead focusing on the agreement that had been made twenty years earlier. The court said, erroneously, that "it looks that the Court [in 2003] accepted the written guilty plea of the defendant[.]" As noted above, the "PLEA PROPOSAL ORDER" entered on February 26, 2003, made clear that the circuit court had not accepted the petitioner's guilty plea; rather, that order plainly stated "that the Court does defer acceptance or rejection of said plea agreement," and it scheduled a hearing for March 27, 2003, at which time "the Court will either accept or reject the Defendant's plea." The circuit court compounded its error when, at the July 12, 2023, hearing, it went on to say:

> Well, it's the nature of a binding plea. It's what the rules allow for a binding plea. They simply don't allow the defendant to back out of the plea once it's – once it's binding and sent to the Court for determination as to whether it should be accepted or rejected. That's – beyond either party's power. It's my position, it bound either part[y's] power to back out of it at that point. It is what binding means.

The circuit court erred by conflating two concepts. As the majority has correctly observed, the "binding" nature of a Rule 11(e)(1)(C) plea agreement relates to the circuit court's inability to modify the agreed-upon sentence. Thus, a "binding plea agreement" refers to one under which the court is bound to impose a specific sentence that has been agreed upon by the parties. Importantly, such an agreement is "binding" upon the court if, and only if, the court accepts it. But, the circuit court is never bound to accept a binding plea agreement; rather, when considering a binding plea agreement, Rule 11(e)(2)

7

permits the court to "accept or reject the agreement, or [it] may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report."

The majority correctly notes that the circuit court erred in ruling that a defendant who is a party to a binding plea agreement is without the ability to move to withdraw from it. Certainly, all plea agreements are contracts between the State and a defendant and, although the terms thereof may be enforceable as between the State and the defendant, they are not what are referred to as "binding plea agreements," i.e., binding upon the court. For instance, a defendant who agrees to plead guilty to a charge of burglary in exchange for the State's agreement to recommend suspension of his penitentiary sentence in favor of probation, or in exchange for the state's agreement to remain silent at sentencing, has not entered into an agreement that binds the court in any way. Even though it is not binding upon the circuit court, such an agreement is enforceable by the State against the defendant, or by the defendant against the State.[4]

---

[4] *See* Syl. Pt. 4, *State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998) ("When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party."); *see also* Syl. Pt. 8, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995) ("There are two possible remedies for a broken plea agreement—specific performance of the plea agreement or permitting the defendant to withdraw his plea. A major factor in choosing the appropriate remedy is the prejudice caused to the defendant."); Syl. Pt. 4, *State ex rel. Thompson v. Pomponio*, 233 W. Va. 212, 757 S.E.2d 636 (2014) ("'"A prosecuting attorney or his successor is bound to the terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts to his substantial detriment in reliance thereon." Syllabus, *State ex*

8

Thus, even though the law recognizes that both the State and the defendant may have the right to have the terms of such an agreement be enforced as to each other, such an agreement is not a "binding plea agreement" because it imposes no restriction or limitation on what the court may do, so long as the court acts within what the applicable statutes permit it to impose as a legal sentence. Rule 11 recognizes that when the State and a defendant seek, by their plea agreement, to bind the circuit court to impose a specific sentence, it is an intrusion into judicial authority. This is because the authority to impose a sentence for a conviction is conferred by the constitution only upon the judiciary. Any intrusion thereon, as Rule 11(e)(1)(C) recognizes, requires that the court first accept the plea agreement—only then is the court bound by the agreed-upon sentence. Otherwise, the State and a defendant could usurp the court's constitutional sentencing authority.

Such was the case here with the plea agreement made by the State and the petitioner in 2003. The 2003 plea agreement sought to restrict what the circuit court could do in imposing sentence. Wisely, in February of 2003, the circuit court deferred the decision of whether to accept or reject the proposed plea agreement and plea to learn what information a pre-sentence investigation report might yield.

Because the circuit court had neither accepted nor rejected the petitioner's guilty plea or the binding plea agreement, the agreement remained inchoate. Like the majority, I disagree with the view of the circuit court (expressed during the July 12, 2023,

---

*rel. Gray v. McClure,* 161 W.Va. 488, 242 S.E.2d 704 (1978).' Syl. Pt. 2, *State v. Palmer,* 206 W.Va. 306, 524 S.E.2d 661 (1999).").

hearing) that the agreement was immutable as of February 21, 2003, when it was tendered and proposed to the court, eliminating any right by the petitioner even to move to withdraw from it. Although the circuit court stated that the agreement "bound either part[y's] power to back out of it at that point[,]" the fact of the matter is that because the court had neither accepted nor rejected either the 2003 agreement or the guilty plea, the parties thereto—the State and the petitioner—were free to alter it, as they jointly agreed to do. In my view, the circuit court usurped the prosecutorial powers and authority of the executive by prohibiting the parties from modifying the inchoate plea agreement and plea. This was error. To be clear, if the circuit court had already accepted the petitioner's guilty plea, but then later rejected the parties' plea agreement, then Rule 11(e)(4) would have required the court to "afford the defendant the opportunity to then withdraw the plea." Similarly, if the court had already accepted the plea and plea agreement, then Rule 11(e)(3) would have required the court to "embody in the judgment and sentence the disposition provided for in the plea agreement." Neither scenario occurred in this case.

I agree completely with the majority's holding that the circuit court erred by determining that the entry of a guilty plea pursuant to a binding plea agreement precludes a defendant from moving to withdraw his plea. Ultimately, my disagreement with the majority relates to its analysis of this case under Rule 32(e) of the West Virginia Rules of Criminal Procedure, which provides:

> **(e) Plea Withdrawal.** If a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea if the defendant

10

shows any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by petition under W.Va. Code § 53-4A-1.

Rule 32(e) does not make any specific distinction between a plea that has been accepted by the court and one that has not. In my view, Rule 32(e) contemplates a guilty or nolo contendere plea that has been accepted by the circuit court, which, as fully explained above, did not occur in this case. Accordingly, the State and the petitioner were free to revise or amend their agreement, as they did, without interference by the court,[5] and to propose for the court's consideration any new or amended agreement that their negotiations produced.

In 2002, because of conflicting interpretations by federal district courts around the country of the standard to be applied when a defendant moves to withdraw a guilty plea before it has been accepted by the court, the Federal Rules of Criminal Procedure (Federal Rules) were amended. Federal Rule 11(d) now provides that

> [a] *defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any*

---

[5] *See State v. Sugg,* 193 W.Va. 388, 406, 456 S.E.2d 469, 487 (1995) ("Rule 11(e)(1) prohibits absolutely a trial court from all forms of judicial participation in or interference with the plea negotiation process."); *see also State v. Adkins*, 249 W. Va. 688, 693, 901 S.E.2d 52, 57 (2024) ("Courts have widely recognized that Rule 11 absolutely prohibits all forms of judicial participation in or interference with the plea negotiation process." (Emphasis added)).

> *reason or no reason*; or (2) after the court accepts the plea, but before it imposes sentence if: (A) the court rejects a plea agreement under Rule 11(c)(5); or (B) the defendant can show a fair and just reason for requesting the withdrawal.

(Emphasis added).

West Virginia's Rules of Criminal Procedure are modeled after the Federal Rules.[6] However, while the Federal Rules have been updated many times, ours have remained unchanged for thirty-one years. I would, by our decision in this case, hold that until a court accepts a plea of guilty, Rule 32(e) does not apply, and a defendant is permitted to withdraw it, especially when, as happened here, the State does not object.[7]

For the reasons stated above, I concur, in part, and dissent, in part.

---

[6] *See State ex rel. Reed v. Douglass*, 189 W. Va. 56, 57 n.3, 427 S.E.2d 751, 752 n.3 (1993) ("[O]ur Rules of Criminal Procedure are patterned after the Federal Rules.").

[7] I find it curious that while the State, through the prosecuting attorney, agreed with the petitioner that he could withdraw his plea and that the plea agreement should be modified, on the petitioner's appeal, the State has taken a different position and opposes the new agreement.