524 S.E.2d 661

**STATE of West Virginia, Appellee,**

v.

**Michael Wayne PALMER, Appellant.**

**No. 26112.**

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 19, 1999.

Decided Dec. 2, 1999.

Barry L. Bruce, Esq., Barry L. Bruce & Associates, Lewisburg, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr., Esq., Attorney General, Leah Perry Macia, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellee.

PER CURIAM:

The appellant, Michael Palmer ("Palmer"), appeals the denial of his motion to dismiss several criminal charges, claiming that the dismissal of the charges was part of a plea agreement. Palmer contends that the Circuit Court of Summers County erred in fail-

ing to dismiss the charges when his plea agreement of November 10, 1997 included the dismissal of "all charges now pending or under investigation[.]" Following our review of the record, we reverse and remand this case for dismissal of the charges.

## I.

In 1997, Palmer was charged in the Circuit Court of Summers County, in two, two-count indictments,[1] with the felony offenses of burglary and grand larceny. Palmer was also charged in the Summers County Magistrate Court with several misdemeanor offenses, including: illegal acquisition of cable television, fleeing an officer, obstructing an officer, battery on a police officer, possession of a weapon, petit larceny, and transferring stolen property.

On November 10, 1997,[2] Palmer entered into a written plea agreement with the Summers County prosecuting attorney. The written plea agreement required Palmer to plead guilty to two of the four felony counts; in exchange, the State agreed to dismiss "all charges now pending or under investigation," except for the misdemeanor charge of battery on a police officer.[3]

On November 10, 1997, the circuit court asked Palmer if he was willing to enter into the agreement, and to plead guilty as agreed. Palmer affirmed his willingness to plead, and the court accepted the plea agreement. Palmer then entered a plea of guilty to the two felony charges. Sentencing was postponed until after a presentence investigation was performed.

Concurrent with the plea negotiations between the State and Palmer, law enforcement officers were conducting an investigation involving alleged illegal drug activity by Palmer and others. Trooper Bradley of the West Virginia State Police conducted the drug investigation jointly with the United States Attorney's Office. Trooper Bradley had also conducted the investigation into Palmer's burglary and grand larceny, the criminal acts to which the appellant plead guilty on November 10, 1997.

At the conclusion of the drug investigation, the United States Attorney's Office declined to prosecute Palmer. Trooper Bradley then turned the results of the investigation over to the Summers County prosecuting attorney on November 14, 1997—only 4 days after the plea agreement was reached and the guilty pleas were taken by the court. The prosecuting attorney almost immediately prepared drug charges against Palmer. On November 19, 1997, the Summers County Grand Jury returned a nine-count indictment against Palmer, Criminal Action No. 97–F–70.

Palmer moved to dismiss Criminal Action No. 97–F–70, arguing that the charges in the indictment involved matters that were pending or under investigation at the time Palmer entered into the plea for Criminal Action Nos. 97–F–10 and 97–F–11.

The circuit court denied Palmer's motion, finding that neither the prosecuting attorney nor defense counsel were aware of the pending drug investigation at the time when the parties entered into the agreement. The circuit court then permitted the State to reform the plea agreement without the agreement of the defendant, so that it allowed the State to proceed against Palmer on the drug charges. The circuit court also afforded Palmer the opportunity to withdraw his plea of guilty.

The presentence investigation was completed for criminal cases 97–F–10 and 97–F–11, and a "Plea Order" was entered on January 7, 1998, essentially outlining the plea

---

1. Criminal Action Nos. 97–F–10 and 97–F–11.

2. According to the brief for the State the plea agreement contract was drafted on October 29, 1997, and signed by the defendant and the prosecuting attorney on November 10, 1997.

3. The November 10, 1997 plea agreement provided for the following:
    2. Resolution of charges: Defendant will plead guilty as charged to grand larceny as contained in count 2 of the two Summers County indictments for Criminal Actions No: 97–F–10 and 97–F–11. These are felony offenses. After the Court accepts this plea, the State will move to dismiss each county number 1 of the two Summers County indictments, and all charges now pending or under investigation except for battery on a police officer (Summers County Magistrate Case No. 97–M–19), with prejudice.

agreement, as unilaterally modified, entered between Palmer and the State. The language from the written plea agreement agreeing to dismiss all charges then pending or under investigation was not included in the plea order. On January 16, 1998, Palmer was sentenced to 2 to 20 years in the state penitentiary for cases 97–F–10 and 97–F–11.

Reserving his right to appeal the drug charge indictments, Palmer entered into a plea agreement with the State in Criminal Action No. 97–F–70 and was sentenced on November 10, 1998, for a term of 3 to 25 years to run concurrently with his sentence in cases 97–F–10 and 97–F–11.

Palmer then appealed the denial of his motion to dismiss the drug charges in Criminal Case No. 97–F–70, contending that the State was prohibited from bringing charges against him for crimes that were being investigated at the time the plea agreement was reached in cases 97–F–10 and 97–F–11.

## II.

■ The standard of review for issues involving the breach of a plea agreement is set forth in Syllabus Point 1 of *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995).

Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed *de novo*.

Therefore, when the facts are not in dispute, "the question of whether the State's conduct breached the terms of a plea agreement is a question of law that we review de novo." *State v. Myers*, 204 W.Va. 449, 455, 513 S.E.2d 676, 682 (1998).

■ We have traditionally applied rules of contract law to plea agreements. "As a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *Brewer*, 195 W.Va. at 192, 465 S.E.2d at 192.

■ The State argues that the plea order entered by the circuit court on January 7, 1998, on the original charges did not contain the pertinent language "all charges pending or under investigation." The State contends that a plea agreement alone is not enforceable until entered by the sentencing court. The State cites to *Mabry v. Johnson*, 467 U.S. 504, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) for the proposition that a plea bargain standing alone is without constitutional significance until embodied by a judgment of the court. Therefore, the State argues that Palmer had no right to the enforcement of the plea agreement because the pertinent language was not embodied in the judgment of the court.

The United States Supreme Court in *Mabry* stated:

A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, until embodied in the judgment of a court, does not deprive an accused of liberty or any other constitutionally protected interest. *It is the ensuing guilty plea that implicates the Constitution.*

*Id.* at 507–508, 104 S.Ct. at 2546, 81 L.Ed.2d at 442 (emphasis added).

In the instant case, we note that the plea order was drafted several months *after* the plea agreement was written, signed by both parties, and accepted by the circuit court. More importantly, we note that the plea order was drafted *after* Palmer entered his

plea of guilty in reliance on the written plea agreement.

We have long adhered to the principle that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration [for the plea], such promise must be fulfilled." *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427, 433 (1971). As we have held "[b]ecause a plea agreement requires a defendant to waive fundamental rights, we are compelled to hold prosecutors and courts to the most meticulous standards of both promise and performance." *Brewer*, 195 W.Va. at 192, 465 S.E.2d at 192. "There is more at stake than just the liberty of [the] defendant. At stake is the honor of the government[,] public confidence in the fair administration of justice, and the efficient administration of justice[.]" *United States v. Carter*, 454 F.2d 426, 428 (4th Cir.1972).

■ Consequently, "when a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." *State v. Myers*, 204 W.Va. at 459, 513 S.E.2d at 686. Palmer negotiated for the right to have dismissed "all charges now pending or under investigation." This plea agreement "contract" was signed by both parties and accepted by the circuit court. No exception to the dismissal clause was made that would allow the State to bring charges on activity then under investigation.

We further note that the investigation of the drug activity was being conducted by Trooper Bradley—the same officer who was involved in the investigation of the burglary and larceny activities charged in criminal cases 97–F–10 and 97–F–11. We have previously imputed the knowledge of the investigating officer to the prosecution stating that "[e]ven if the prosecution was unaware of [the contested evidence], which seems quite unlikely considering all the circumstances, what [the investigating officer] knew must be imputed to the prosecution. He was a part of the prosecution." *State v. Hall*, 174 W.Va. 787, 791, 329 S.E.2d 860, 863 (1985). Similarly, Trooper Bradley, as one of the investigating officers, knew of the drug investigation and had ample opportunity to inform the prosecutor of its existence. That he failed to inform the prosecuting attorney of the investigation should not now be held against Palmer.[4]

■ The prosecutorial team of the State agreed to the pertinent language in the plea agreement and now must adhere to this agreement. "A prosecuting attorney or his successor is bound to the terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts to his substantial detriment in reliance thereon." Syllabus, *State ex rel. Gray v. McClure*, 161 W.Va. 488, 242 S.E.2d 704 (1978).

■ Absent extraordinary circumstances, neither the State nor a circuit court judge may modify a valid plea agreement once accepted. "Once a circuit court unconditionally accepts on the record a plea agreement under Rule 11(e)(1)(C) of the West Virginia Rules of Criminal Procedure, the circuit court is without authority to vacate the plea and order reinstatement of the original charge." Syllabus Point 4, in part, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995).[5] In the present case, Palmer performed pursuant to the terms in the plea agreement; consequently, the State is bound to perform pursuant to the terms of the agreement.

### III.

Consequently we find that the circuit court committed reversible error in denying Palmer's motion to dismiss the charges under Criminal Action No. 97–F–70, and we re-

4. We recognize that the plea agreement in this case is unique. If an investigation had been conducted wherein the identity of the suspect was not known at the time of the plea agreement but was later shown to be Palmer, we might reach a different result.

5. Rule 11(e)(1)(C) [1995] of the *West Virginia Rules of Criminal Procedure* provides the procedure to be followed for plea agreements.

mand this matter for further proceedings consistent with this opinion.[6]

Reversed and Remanded.

Judge JOHN S. HRKO, sitting by special assignment.

Justice SCOTT did not participate in the decision of the Court.

---

6. Palmer raises another issue on appeal concerning the plea agreement. Due to our decision in this matter, we do not address this additional assignment of error.