IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2014 Term

**FILED**

**October 30, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-1266

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

VIRGIL EUGENE SHRADER,
Defendant Below, Petitioner

Appeal from the Circuit Court of Mercer County
The Honorable David W. Knight, Special Judge
Criminal Action No. 08-F-117

REVERSED AND REMANDED

Submitted: October 1, 2014
Filed:  October 30, 2014

Derrick W. Lefler, Esq.
Gibson, Lefler &Associates
Princeton, West Virginia
Counsel for Petitioner

Patrick Morrisey, Esq.
Attorney General
Laura Young, Esq.
Deputy Attorney General
Christopher S. Dodrill
Assistant Attorney General
Charleston, West Virginia
Counsel for Respondent

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICES BENJAMIN and LOUGHRY dissent and reserve the right to write separate opinions.

SYLLABUS BY THE COURT

1. "Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed *de novo*." Syl. Pt. 1, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).

2. "There is no absolute right under either the West Virginia or the United States Constitutions to plea bargain. Therefore, a circuit court does not have to accept every constitutionally valid guilty plea merely because a defendant wishes to so plead." Syl. Pt. 2, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).

3.    "[T]he decision whether to accept or reject a plea agreement is vested almost exclusively with the circuit court." Syl. Pt. 3, in part, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).

4.    "'When a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State and the defendant not to have the terms of the plea agreement breached by either party." Syl. Pt. 4*, State v. Myers*, 204 W. Va. 449, 513 S.E.2d 676 (1998).

5.    "Due to the significant constitutional rights that a criminal defendant waives in connection with the entry of a guilty plea, the burden of insuring both precision and clarity in a plea agreement is imposed on the State. Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant." Syl. Pt 3, *State ex rel. Thompson v. Pomponio*, 233 W. Va. 212, 757 S.E.2d 636 (2014).

6.    "There are two possible remedies for a broken plea agreement – specific performance of the plea agreement or permitting the defendant to withdraw his plea. A major factor in choosing the appropriate remedy is the prejudice caused to the defendant." Syl. Pt. 8, *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995).

Workman, Justice:

This case is before the Court upon the Petitioner's, Virgil Eugene Shrader's, appeal of the November 15, 2013, Order of the Circuit Court of Mercer County, West Virginia, which rescinded the Petitioner's probationary period due to a violation of one of the conditions and sentenced the Petitioner to a term of one to five years in the penitentiary for first degree sexual abuse. After considering the parties' briefs and oral arguments, the appendix record, and all other matters before the Court, we find that the circuit court erred in rescinding the Petitioner's probationary period based upon its determination that the Petitioner failed to comply with the conditions of his probation.[1] We remand the case for further proceedings in which the terms of the plea agreement entered into between the parties and accepted by the circuit court are specifically performed, including allowing the Petitioner to withdraw his nolo contendere plea, requiring the State to dismiss all the charges against the Petitioner in Case No. 08-F-117, as well as the entry of an order discharging the Petitioner from custody.

---

[1]Because we are reversing the circuit court, we decline to address the Petitioner's assignment of error regarding denial of credit for time served on home confinement.

1

## I. Facts and Proceedings Below

The Petitioner was arrested on May 28, 2007,[2] and indicted on February 8, 2009, for twelve counts of sexual assault, sexual abuse and sexual abuse by a custodian or person of position of trust to a child.[3]

The Petitioner and the State entered into a written plea agreement,[4] in which the Petitioner agreed to enter a nolo contendere or no contest plea[5] to one count of sexual

---

[2]The Petitioner was released on bail and was placed on home confinement as a condition of his bail. He spent 630 days, almost twenty-one months, on home confinement.

[3]An agreed order was entered on February 12, 2009, dismissing six counts in the indictment. Three of the counts pertaining to sexual abuse by a person of trust were dismissed because the offenses charged could have taken place before the effective date of the statute. The counts pertaining to sexual assault in the first degree were dismissed because the alleged victim told police and a child protective services worker that there was no penetration or contact between the sex organs of the defendant and the accuser, there was no oral contact between the two and there was no other allegation relating to sexual intercourse as defined by statute. Six counts of first degree sexual abuse remained.

[4]The first agreement was dated February 17, 2009; however, that agreement was revised three days later by letter dated February 20, 2009, to clarify that the Petitioner did not have to register as a sexual offender unless or until a final adjudication of guilty under the plea agreement.

[5]The plea of nolo contendere, which literally means "'I do not wish to contend[,]' . . . has its origin in the early English common law. It constitutes an implied confession of guilt." *State ex rel. Clark v. Adams*, 144 W. Va. 771, 778, 111 S.E.2d 336, 340 (1959), *cert denied*, 463 U.S. 807 (1960); *see also Myers v. Frazier*, 173 W. Va. 658, 665, n.10, 319 S.E.2d 782, 790 n.10 (1984) . The Petitioner also refers to the plea in this case as a "best interest" plea, but in effect it was at least partially a *Kennedy* plea, which is set forth in syllabus point one of *Kennedy v. Frazier*, 178 W. Va. 10, 357 S.E.2d 43 (1987). In *Kennedy*, we held that "[a]n accused may voluntarily, knowingly and understandingly consent to the

(continued...)

2

abuse in the first degree.[6]  In exchange for this plea, the State agreed to dismiss all the

remaining counts in the indictment.  Further, the Petitioner and the State agreed that "the

Court shall defer any adjudication of guilt for a period of time and under such conditions as

may be set by the Court which shall include[,] but not be limited to[,] . . ." the Petitioner

undergoing "a sexual offender psychiatric evaluation by an appropriate mental health

professional selected or approved by the State[,]" and the Petitioner abiding "by such

treatment recommendations as may be contained in said evaluation[.]"[7]  According to the

terms of the agreement, "[i]f the Defendant successfully completes the terms and conditions

. . . then the State agrees to join the Defendant in a motion to withdraw this plea and dismiss

all charges in the subject indictment against him."  If, however, the Petitioner failed to

---

[5](...continued)
imposition of a prison sentence even though he is unwilling to admit participation in the crime, if he intelligently concludes that his interests require a guilty plea and the record supports the conclusion that a jury could convict him."  *Id.*  The term "best interest plea" appears only one other time in West Virginia case law and that case also arose in Mercer County, leading us to assume that this is a local term of art for a *Kennedy* plea.

[6]The State represented that the plea, which was entered into with the Petitioner, was with the consent of the victim and the victim's family.

[7]Other conditions in the revised plea agreement included:

> (c)　　The Defendant will have no contact with his accuser and her family.  The Defendant is not restricted from contact with his own children, grandchildren, and anyone else other than the accuser and her family;
>
> (d)　　The Court's standard conditions and terms for probation: The Defendant is not required at this time to enter a specific sexual offender probationary contract with the Probation Officer.

3

"successfully complete the terms and conditions" of the agreement, " the Court will schedule a presentence investigation of Defendant and sentence him accordingly." Thus, the terms of the agreement provided that "[i]f the Defendant does not successfully complete the terms of this agreement and is adjudged guilty, then he will be subject to register as a 'sexual offender.'" Further, the agreement provided that "the Defendant's adjudication of guilt or no contest under this plea will be deferred until the Defendant's successful completion of the terms or the Court's determination that Defendant violated the terms and conditions . . . which[ever] occurs first." Finally, the agreement provided that the Petitioner did not have to register as a "sexual offender" unless and until a final adjudication of guilty under this plea.[8]

On February 17, 2009, the circuit court held a plea hearing. During the hearing, the Petitioner stated that he was pleading no contest to one count of first degree sexual abuse. The circuit court confirmed that it was going to "defer any adjudication of guilt."

On February 27, 2009, the circuit court held a status hearing in which two issues were addressed. First, the circuit court found that the Petitioner would not have to

---

[8]According to the prosecutor, the plea agreement "was the best thing for the State, I can tell you with certainty. I very rarely enter into plea bargains . . . ."

register as a sex offender because he had not yet been adjudicated guilty. Second, the circuit court was presented with a sexual offender psychiatric evaluation by a mental health provider who recommended that the Petitioner receive treatment. A problem had arisen, however, regarding the treatment. To that end, the probation officer in charge of supervising the Petitioner had scheduled an appointment for him with Jason Newsome, who was director of clinical services at Family Counseling Connection (hereinafter referred to as "the Day Report Center"). Mr. Newsome was present at the status hearing. He told the circuit court that while a conviction was not necessary to be considered for his treatment program, there had to be some admission of guilt. According to Mr. Newsome, the Petitioner had denied that he had committed any inappropriate sexual acts toward the alleged victim in the case. The circuit court stated to the Petitioner's counsel: "So your client basically is already in default." The Petitioner's counsel disagreed. The prosecuting attorney also disagreed that the Petitioner violated the conditions of the plea agreement. Instead, the prosecutor stated:

> I feel very responsible, because I recommended Mr. Newsome, believing that he could get – there are programs that– there are programs where you do not have to admit, where you can go and try – I think you found one in Abingdon [,Va.,] . . . . I just thought Mr. Newsome was closer and recommended him. But, I mean, I'm not insisting that this is the person he go to, just that he be in a program.

The circuit court questioned whether the plea was appropriate, stating "if he wants to deny it, [that] he hadn't done anything wrong, maybe we ought to go all the way back and have a trial." The circuit court indicated that it "can't accept a plea bargain agreement that carries

5

these things in it [referring to a treatment program] that he cannot abide by from the start and he's doomed to fail. I mean, that would be unfair of me to do that." The circuit court then allowed the parties time a couple of weeks "to determine what's going to happen."

On March 13, 2009, the circuit court re-visited the issue in a second plea hearing. This hearing was necessitated by the revised plea agreement letter dated February 20, 2009. *See supra* note 4. During this hearing, the parties agreed upon and the circuit court approved the Petitioner to undergo a sexual offender evaluation as well as treatment, if recommended, with William Brezinski, M.A., a psychologist. The choice of Mr. Brezinski was based upon him being able to treat the Petitioner without requiring that the Petitioner admit guilt as a sex offender.

On June 9, 2009, there was another status hearing in which the parties informed the circuit court that the Petitioner had undergone a sex offender evaluation by Mr. Brezinski and had been in treatment with the psychologist since the evaluation. The circuit court, by order dated the same day, provided that "the defendant continue his counseling with William Brez[i]nski, M.A., until deemed unnecessary by said counselor."

The Petitioner was treated by Mr. Brezinski for almost two years. During the April 18, 2011, status hearing, the parties informed the circuit court the Petitioner had

6

completed the treatment recommended by Mr. Brezinski. The circuit court ultimately found, based upon Mr. Brezinski's report, that the Petitioner "ha[d] been fully compliant and had completed his sexual offender counseling . . . in wholly satisfactory manner." Based upon his completion of this treatment, the Petitioner sought early release from the five-year period of conditions imposed by the circuit court. The Petitioner's probation officer told the court that the Petitioner "has been compliant in reporting in to me." Despite the successful completion of treatment with Mr. Brezinski, the circuit court did not want to release the Petitioner early from the conditions of his plea agreement.[9]

Consequently, the probation officer recommended placing the Petitioner back into the sexual offender treatment program at the Day Report Center in Mercer County, which was the same treatment program that previously rejected the Petitioner at the outset

---

[9]The other conditions in the revised plea agreement were set forth *supra* note 7. Additionally, in March 13, 2009, order, the circuit court set forth the following conditions, other than the treatment condition, for the Petitioner to abide by:

> 2) That the defendant obey all laws;
> 3) That the defendant not consume alcohol;
> 4) That the defendant report monthly to his probation officer and personally reschedule his appointment if he cannot make such appointment;
> 5) That the defendant provide all information to his probation officer, including his address, telephone number, medications, and provide any changes of same.
> 6) That the defendant abide by the normal terms and conditions of probation although he is not on a probationary period[.]

due to his refusal to admit that he was a sex offender. The probation officer reminded the circuit court that they tried to put him at the Day Report Center, but the Petitioner "was offended by the paperwork that indicated he was a sex offender." The circuit court indicated that it did not "care if he's offended or not. I'll put him over there. . . . [L]et's put him back over there for a year and I'll look at it again after a year." The circuit court further cautioned the Petitioner that he needs to "look in the mirror and be honest with yourself so we can proceed in this matter.[,]" and that this proceeding "will not go away until we get through with five years."

The probation officer also raised issues regarding the use of a polygraph in the treatment program. The prosecutor[10] represented that the polygraph test was "not used to go back and – determine whether he was guilty of sexual contact with . . . [the child] but rather as one to – as a deterrent for future contact to find out if there's been anything since." The circuit court also assured the Petitioner that if he failed a polygraph, the court would not automatically revoke his probationary status. The circuit court indicated that it would probably have an evidentiary hearing so that "we could hear how it was conducted, what was said and what the responses were."[11]

---

[10]The assistant prosecuting attorney originally assigned to the Petitioner's case retired at some point during the proceedings below.

[11]The circuit court entered an order dated April 29, 2011, regarding the change in treatment.

The Petitioner participated in treatment at the Day Report Center with Rance Berry, a therapist, from April of 2011, when the Petitioner stopped treating with Mr. Brezinski, until August of 2013. The Petitioner met Mr. Berry once a week during this time. Notwithstanding this treatment, at a July 11, 2013, status hearing, with the five-year period for the conditions set to expire in February of 2014, the State requested the Court to find that the Petitioner had violated the conditions of his deferred adjudication because he had not "successfully" completed treatment. The State argued that "he's not complied with his therapy by failing to acknowledge that he did anything wrong. He can't move forward in that part of the treatment." The State took this position despite being reminded by the Petitioner's counsel that the Petitioner "did enter a best interest plea, by which he wasn't required to admit any responsibility." Further, the Petitioner's counsel argued that "but for . . . [the Petitioner's] results on the polygraph[12] [referring to the Petitioner failing a polygraph test] he's been a model probationer. He's completed all the terms and conditions of his probation." Nonetheless, the circuit court focused upon the Petitioner's failure to pass the polygraph. It was this failure that was inextricably intertwined with the Petitioner's failure to acknowledge any wrongdoing that ultimately caused his inability to "successfully" complete the third treatment program. As the circuit court found, "he did not meet one of the conditions of probation because he can't get a psychologist in here to say that he's

---

[12]There was no testimony or evidence regarding the questions that the Petitioner failed on during the polygraph.

successfully completed a sexual [offender counseling]." As the circuit court indicated in its July 12, 2013, order: "The Court expresses its concern regarding defendant's failure to actively participate in sexual offender therapy behavior by not acknowledging that he did anything wrong pursuant to the Court's Order of April 28, 2011." The Court then set the date of October 1, 2013,[13] to proceed "upon defendant's adjudication."

On November 1, 2013, the circuit court conducted an "adjudication" hearing. During this hearing, the Petitioner's counsel represented to the court that the Petitioner had acknowledged responsibility for the crime with which he was charged. The circuit court, however, found the admission to be insincere and only done because the Petitioner was facing imprisonment. The probation officer stated that she had no problems with the Petitioner as "[h]e comes in and does his report like he's suppose to[.]" Despite his compliance, the probation officer informed the circuit court that "one of the conditions of his probation was that he successfully complete the sex offender treatment and he hasn't done that because he refused to admit guilt until just a few months ago[14] and now his probation time is almost up." Mr. Berry, the Petitioner's therapist, testified that his treatment stopped

---

[13]The hearing was continued to November 1, 2013.

[14]Mr. Berry testified that the Petitioner admitted guilt in August prior to his treatment being terminated.

10

after over two years,[15] because of the Petitioner's "refusal to accept responsibility for his actions." The circuit court then accepted the plea previously made, rescinded his probation,[16] adjudged him guilty and sentenced him from one to five years in the penitentiary, "due to defendant's non-compliance of conditions of his probation, including defendant's failure to abide by sex offender psychiatric treatment recommendations and his prior failure to admit to sexual abuse." Focusing on the Petitioner's failure to admit guilt, the circuit court stated:

[15]The Petitioner had undergone two years of treatment with Mr. Brezinski from March 11, 2009, until March 22, 2011, followed by over two more years of treatment with Mr. Berry at the Day Report Center from April 11, 2011, until August of 2013.

[16]The Petitioner assigned as error the failure to receive notice of the probation revocation pursuant to our holding syllabus two of *State ex rel. Jones v. Trent*, 200 W. Va. 538, 490 S.E.2d 357 (1997) ("The final revocation proceeding required by the due process clause of the Fourteenth Amendment and necessitated by W. Va. Code, 62-12-10, as amended, must accord an accused with the following requisite minimal procedural protections: (1) written notice of the claimed violations of probation; (2) disclosure to the probationer of evidence against him; (3) opportunity to be heard in person and to present witnesses and documentary evidence; (4) the right to confront and cross-examine witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (5) a 'neutral and detached' hearing officer; (6) a written statement by the fact finders as to the evidence relied upon and reasons for revocation of probation.' Syl. Pt. 12, *Louk v. Haynes*, 159 W. Va. 482, 223 S.E.2d 780 (1976)"). The record, however, demonstrates that in an order dated July 12, 2013, the Petitioner was notified that "[t]he Court expresses its concern regarding defendant's failure to actively participate in sexual offender therapy behavior by not acknowledging that he did anything wrong pursuant to the Court's Order of April 28, 2011." Further, the circuit court set a hearing for October 1, 2013, "at which time the Court will proceed upon defendant's adjudication." At the hearing, which was continued to November 1, 2013, the circuit court gave the Petitioner an opportunity to be heard in person and to present witnesses and documentary evidence, as well as the to confront and cross-examine witnesses. Consequently, we find no merit to the Petitioner's alleged error on this issue.

11

> This could have been taken care of long ago but you refused to admit your actions. This admission [referring to the Petitioner's then recent admission of guilt] I think is a red herring. I think you're making this admission now just to stay out of jail. This just needs to come to an end. We've tried to take care of this now for almost five years and we're still in it. We just need to end it.

The circuit court further found that "[h]e wouldn't admit to his actions, so therefore he couldn't be treated. As far as I'm concerned he lied under oath." Even when the Petitioner's counsel reminded the circuit court that the Petitioner had entered a nolo contendere/*Kennedy*[17]-type plea, the circuit court responded: "I don't care what you call it, when I took his plea, whether he said guilty or not, I presumed him guilty. That's what a plea of guilty is. I don't care what you want to call it. It was a guilty plea and he didn't comply." It is from the November 15, 2013, order memorializing the above-referenced rulings made by the circuit court that the Petitioner now appeals.

## II. Standard of Review

We review this case under the standard set forth in syllabus point one of *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 465 S.E.2d 185 (1995):

> Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement

---

[17]*See supra* note 5.

were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed *de novo*.

## III. Discussion of Law

At the outset, we note that this case is a procedural quagmire because of the manner in which the parties and the circuit court handled the Petitioner's nolo contendere plea. We caution prosecuting attorneys, defense attorneys and circuit courts that there are procedures and requirements to be followed for various types of plea agreements, including plea agreements containing conditions. For instance, Rule 11 of the West Virginia Rules of Criminal Procedure provides for conditional pleas as follows:

> With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

Further, under West Virginia Code §§ 62-12-1 to -3 (2014), an individual can enter a guilty plea and the circuit court can suspend "the impostion or execution of sentence" and place the individual on probation with conditions. *Id.* § 62-12-3 ("Whenever, upon the

13

conviction of any person eligible for probation under the preceding section [§ 62-12-2], it shall appear to the satisfaction of the court that the character of the offender and the circumstances of the case indicate that he is not likely again to commit crime and that the public good does not require that he be fined or imprisoned, the court, upon application or of its own motion, may suspend the imposition or execution of sentence and release the offender on probation for such period and upon such conditions as are provided by this article . . . .").

Lastly, under the pretrial diversion agreement statute, West Virginia Code § 61-11-22 (2014), a prosecuting attorney can enter into this type of agreement with an individual, "under investigation or charged with an offense against the State of West Virginia[.]" There are specific requirements contained within the statute that must be met when entering into a pretrial diversion agreement and there are specific charges that preclude an individual from being able to participate in this type of agreement. When a pretrial diversion agreement is entered into between an individual and a prosecuting attorney, where the person "has successfully complied with the terms of the agreement[,]" the person "is not subject to prosecution for the offense or offense described in the agreement . . . unless the agreement includes a provision that upon compliance the persons agrees to plead guilty or nolo contendere to a specific related offense . . . ." *Id*. We also note that because the Petitioner was charged with first degree sexual abuse, he would not have been eligible to

14

participate in a pretrial diversion agreement.

Using the foregoing rule and statutes, the parties could have worked out a plea agreement which actually comported with law; however, the parties entered into the relevant plea agreement and the circuit court accepted the agreement, which was aptly described by the State's attorney during oral argument as follows: "I can't name this animal, whatever it is." Cobbling together a montage of each of the concepts referenced *supra* (*Kennedy* plea, nolo contendere plea, pre-trial diversion, suspending sentence and imposing probation with conditions), the process did not fully comport with any of them, and the work in this case, all the way around, can only be characterized as sloppy. Because the parties failed to raise any argument regarding the legal basis for this type of plea, we decline to address any issue regarding the authority for the "conditional plea with deferred adjudication" that is before the Court.

The determinative issue before the Court is whether the circuit court erred in finding that the Petitioner violated the conditions imposed upon him as part of the plea agreement he entered into in this case. The specific condition of the plea at issue concerns the sexual offender counseling that the Petitioner underwent as a result of the agreement. While the Petitioner maintains that he complied with every condition of the plea agreement, the State argues that the Petitioner failed to "successfully complete the terms and conditions

15

of his agreement which included sexual offender treatment."

Our analysis begins with the well-established law that "[t]here is no absolute right under either the West Virginia or the United States Constitutions to plea bargain. Therefore, a circuit court does not have to accept every constitutionally valid guilty plea [or in this case nolo contendere plea] merely because a defendant wishes to so plead." *Brewer*, 195 W. Va. at 188, 465 S.E.2d at 188, Syl. Pt. 2. "[T]he decision whether to accept or reject a plea agreement is vested almost exclusively with the circuit court." *Id*., Syl. Pt. 3, in part.

We also have recognized that "[a]s a matter of criminal jurisprudence, a plea agreement is subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *Id.* at 192, 465 S.E.2d at 192. Such agreements require "ordinary contract principles to be supplemented with a concern that the bargaining and execution process does not violate the defendant's right to fundamental fairness[.]" *State v. Myers*, 204 W. Va. 449, 458, 513 S.E.2d 676, 685 (1998). We held in *Myers* that "'[w]hen a defendant enters into a valid plea agreement with the State that is accepted by the trial court, an enforceable 'right' inures to both the State an the defendant not to have the terms of the plea agreement breached by either party."[18] *Id.* at 453, 513

_____

[18]However, a trial court cannot be bound by a plea agreement unless a specific sentence is involved. In accordance with Rule 11(e)(1)(c) of the West Virginia Rules of Criminal Procedure, a plea becomes binding when there is an agreement to a specific
(continued...)

16

S.E.2d at 680, Syl. Pt. 4; *see also* Syl. Pt. *State ex rel. Thompson v. Pomponio*, 233 W. Va.

212, 214, 757 S.E.2d 636, 638 (2014) ("'A prosecuting attorney or his successor is bound to

the terms of a plea agreement once the defendant enters a plea of guilty or otherwise acts to

his substantial detriment in reliance thereon. Syllabus, *State ex rel. Gray v. McClure*, 161 W.

Va. 488, 242 S.E.2d 704 (1978).' Syl. Pt. 2, *State v. Palmer*, 206 W. Va. 306, 524 S.E.2d 661

(1999)."). Because a "plea agreement presupposes fundamental fairness," this Court also

found that "'[d]ue process concerns arise in the process of enforcing a plea agreement.'"

*Myers*, 204 W. Va. at 457 and 458, 513 S.E.2d at 684 and 685 (quoting *State v. Smith*, 207

Wis.2d 258, 558 N.W.2d 379, 385 (1997)).

Finally, this Court held that

> [d]ue to the significant constitutional rights that a criminal defendant waives in connection with the entry of a guilty plea, the burden of insuring both precision and clarity in a plea agreement is imposed on the State. Consequently, the existence of ambiguity in a court-approved plea agreement will be construed against the State and in favor of the defendant.

*Thompson*, 233 W. Va. at 214, 757 S.E.2d at 638, Syl. Pt. 3.

In the instant case, the record is clear that the only condition at issue is sexual

---

[18](...continued)
sentence. While a circuit court is under no obligation to accept a proposed binding plea agreement, if the circuit court does accept a binding plea agreement, and "[i]f a sentence is specified in a plea agreement pursuant to ... Rule 11(e)(1)(C), then a circuit court must apply the sentence included in the agreement." *Brewer*, 195 W. Va. at 193, 465 S.E.2d at 193.

17

offender treatment. The subject condition originally agreed upon by the parties and accepted by the circuit court was twofold:  1) the Petitioner was to undergo "a sexual offender psychiatric evaluation by an appropriate mental health professional selected or approved by the State[;]" and, 2) the Petitioner was to abide "by such treatment recommendations as may be contained in said evaluation[.]"  The first treatment program that the State recommended to the Petitioner rejected him from treatment outright due to his refusal to admit that he was a sex offender.  Many treatment programs require participants to acknowledge and accept responsibility for their behaviors as part of the treatment process and a distinction must be made between guilt as a matter of law and guilt as an acknowledgment of responsibility for therapeutic purposes.  Here, however, the State readily apologized on the record for its recommendation to the first treatment program in light of the Petitioner's plea, and agreed to accept alternative treatment which did not require the Petitioner to acknowledge doing the acts which formed the basis of the charge.

Consequently, shortly after the initial plea hearing, the parties agreed that the Petitioner could undergo a sex offender evaluation and any recommended treatment with a psychologist, Mr. Brezinksi.  Mr. Brezinski did not require the Petitioner to admit that he was a sexual offender for treatment purposes.  The circuit court, by orders dated March 13, 2009, and June 9, 2009, accepted this modification, ordering the Petitioner to treat with Mr. Brezinski "*until deemed unnecessary by said counselor.*"  (Emphasis added).

18

Two years later, Mr. Brezinski reported that the Petitioner had successfully finished treatment. The circuit court, however, did not want to shorten the five-year probationary period, so the probation officer recommended and the circuit court agreed to send the Petitioner back to the first treatment program that had rejected him.[19]

Thus, the treatment condition became a moving target. The Petitioner was ordered to undergo sexual offender treatment and in fact was in a treatment program and compliant with treatment for well over four years.[20]

When the Petitioner was within months of completing the five-year period of conditions, the State requested the Court to find that the Petitioner had violated the terms of the plea agreement. The State argued that "he's not complied with his therapy by failing to acknowledge that he did anything wrong. He can't move forward in that part of the

---

[19]Nothing prevented the circuit court from accepting the Petitioner's completion of treatment with Mr. Brezinski, but still requiring the Petitioner to complete the five-year period regarding the other conditions that had been imposed.

[20]As set forth in the March 13, 2009, order, the Petitioner originally agreed "to attend sexual offender counseling[]" for a period of five years. The circuit court, however, later modified this condition in an order dated June 9, 2009, when the court allowed the Petitioner to treat with Mr. Brezinski to "continuing his counseling with William Brez[i]nski, M.A., until deemed unnecessary by said counselor." When Mr. Brezinski released the Petitioner from his care, the circuit court, by order entered April 28, 2011, once again changed this condition to requiring the Petitioner "to participate in the sexual offender evaluation and counseling at the Mercer County Day Report Center under such conditions and frequency as the Day Report Center counseling center staff deem appropriate . . . ."

treatment." The State took this position despite being reminded by the Petitioner's counsel that the Petitioner "did enter a best interest plea, by which he wasn't required to admit any responsibility." Further, the State maintained its position that the condition had been violated despite the Petitioner's therapist, Mr. Berry, testifying that prior to his treatment being terminated, the Petitioner indeed did admit that he committed sexual abuse that was the subject of the plea agreement. The circuit court, however, found the Petitioner's admission insincere and "believe[d] it's just a way of keeping him out of jail."

What is readily gleaned from our review of the appendix record is that the circuit court, while accepting the Petitioner's plea of nolo contendere, was conflicted by it from the beginning. The circuit court made repeated references on the record that it was treating his plea as a guilty plea, that "he's in the twilight zone because he's not willing – even though he admitted in court, basically, by a no contest, he's not willing to say to them [referring to the first treatment program] that 'I did anything wrong;'" and that the Petitioner needed to be "truthful, whether you did this thing or not, because that's what the conditions of being in the sexual treatment . . . ." Instead of rejecting the nolo contendere plea, which the circuit court was well within its discretion to do,[21] the circuit court, as well as the State, approved the agreement and allowed the Petitioner to plead nolo contendere and specifically did not require him to admit any legal guilt to the crime charged. The circuit court, on the

___

[21]*See Brewer*, 195 W. Va. at 188, 465 S.E.2d at 188, Syl. Pt. 3.

20

State's recommendation, then ordered the Petitioner to enter a treatment program that required him to admit guilt for therapeutic purposes. Had the circuit court insisted that the Petitioner continue in the program when first recommended and follow its requirements, and had the Petitioner refused to do so, the court could have found that the Petitioner failed to live up to the court-ordered conditions. Instead, the court accepted his transfer to a treatment program which did not require acknowledgment of the acts for therapeutic purposes. Thereafter, Mr. Brezinski reported that the Petitioner was fully compliant with the treatment program and that the program was complete. Further, despite the acceptance by the circuit court of a plea wherein the Petitioner was not required to admit any legal or therapeutic guilt, the Petitioner ultimately did admit to sexual abuse in his treatment program at the Day Report Center and was still found by the circuit court to have violated the terms and conditions of the plea agreement.

As previously mentioned, this Court has found that the Petitioner waived significant constitutional rights in entering into the plea agreement with the State. *See Thompson*, 233 W. Va. at 214, 757 S.E.2d at 638, Syl. Pt 3, in part. While the circuit court was under no obligation to accept any of the proposed conditions set forth in the written plea agreement and was not, in any way, bound by the terms of the plea agreement, the circuit court did accept the condition, agreed upon by the parties, of allowing the Petitioner to undergo a sexual offender treatment that did not require the Petitioner to admit guilt. *See id.*

21

at Syl. Pt. 4. Despite the existence of this agreement that the Petitioner undergo treatment with Mr. Brezinksi "until deemed unnecessary by said counselor[,]" however, when the counselor determined that the Petitioner had successfully completed treatment, the State and the circuit court, not the Petitioner, breached the terms of the agreement by failing to accept that this condition had been fulfilled. The State had an obligation to follow the agreement it had agreed to insofar as it had accepted that the Petitioner did not have to enter a treatment program that required him to acknowledge guilt. The State failed to meet its obligation under the plea agreement in recommending that the Petitioner return to the Day Report Center.

Consequently, we find that the Petitioner fulfilled all the conditions of the plea agreement at issue in this case and the circuit court erred in concluding that the conditions were violated by the Petitioner. The circuit court should not have rescinded the plea agreement and sentenced the Petitioner to the penitentiary for violating the conditions of the plea agreement. "There are two possible remedies for a broken plea agreement – specific performance of the plea agreement or permitting the defendant to withdraw his plea. A major factor in choosing the appropriate remedy is the prejudice caused to the defendant." *Brewer*, 195 W. Va. at 189, 465 S.E.2d at 189, Syl. Pt. 8. This Petitioner has already served two and one-half years on home confinement, nearly five years on a probationary status with conditions and a year incarcerated, as well as participating in over four years of counseling.

We therefore reverse the decision of the circuit court and order the Petitioner released from incarceration. The case is remanded for further proceedings in which specific performance of the plea agreement is followed including entering an order in which the Petitioner is found to have completed the conditions imposed under the plea agreement, allowing the Petitioner to withdraw his plea and ordering the State to dismiss all the charges in Case No. 08-F-117.[22]

## IV. Conclusion

Based upon the foregoing, the decision of the Circuit Court of Mercer County is reversed and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

---

[22]This relief is based upon the terms of the plea agreement, which expressly provided for the Petitioner to withdraw his plea and for the State to dismiss all the charges in the indictment upon completion of the conditions imposed in the agreement.