# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0811** (Barbour County 17-F-20)

**James Roland L'Heureux,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner James Roland L'Heureux, by counsel Ashley Joseph Smith, appeals the Circuit Court of Barbour County's October 2, 2020, resentencing order. Respondent the State of West Virginia, by counsel Gordon L. Mowen II, filed a response to which petitioner submitted a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, petitioner was indicted on five counts of first-degree sexual assault, fifteen counts of third-degree sexual assault, and five counts of soliciting a minor via computer. The victim, S.M., was eleven years old and petitioner was approximately twenty years old when the incidents resulting in the indictment began; the victim was the daughter of one of petitioner's co-workers. During one incident at the workplace, petitioner "fingered" S.M. by placing his finger inside her "no-no square." Petitioner also texted S.M. and began seeing her outside of the workplace. Petitioner began having sex with S.M. shortly thereafter and continued to do so on a regular basis. S.M. often told petitioner that "she did not want to have sex, and he would yell at her and throw a fit." The sexual relationship lasted for more than eighteen months. When S.M. had concerns that she may be pregnant, petitioner would buy pregnancy tests for her. At the time, she was just twelve years old. S.M.'s brother caught S.M. sneaking out with petitioner one night, after which S.M.'s father told petitioner to stay away from S.M. Shortly thereafter, petitioner returned to Maine, where he had lived previously. Petitioner was arrested in Maine for the West Virginia charges in October of 2016 and was extradited to West Virginia in December of 2016.

In April of 2017, petitioner pled guilty to fifteen counts of third-degree sexual assault pursuant to a plea agreement. In return, the State dismissed the remaining charges against him.

The plea agreement also provided that "[t]he State shall make a sentencing recommendation based upon the [p]re-sentence [i]nvestigation." During the plea hearing, petitioner expressed his understanding of the felonies to which he was pleading guilty and his awareness that he faced an indeterminate term of not less than one nor more than five years of incarceration for each of the fifteen counts. He correctly informed the court that he understood he faced a sentence of fifteen to seventy-five years of incarceration following the acceptance of his plea if the court chose to run the sentences consecutively.

Prior to sentencing, petitioner underwent three comprehensive psychological evaluations, which ultimately concluded that petitioner "presents a low to moderate risk for re-offence" and "it is hard to make recommendations secondary to the amount of contact that [petitioner] had with the victim, other than incarceration. As I said previously this set of circumstances will not present itself again and [petitioner] is learning about the damage he has done to the victim." In the pre-sentence investigation report ("PSI"), the probation officer recommended that the court sentence petitioner "to the maximum penalty allowed in this case, 15-75 years in the penitentiary." She explained that petitioner

> began priming and manipulating the victim at the age of 11. The sexual relationship began just prior to her 12th birthday. [Petitioner] talked the minor victim into sneaking out of her home for over a year and had all forms of sex with her on a daily basis for that same amount of time. [Petitioner] kept the victim out of her home, even on school nights, until 4:30 a.m. [Petitioner] had the victim send him pornographic pictures of herself and he also sent them of himself to her. [Petitioner] provided the victim with alcohol and administered an IV to sober her up. [Petitioner] showed no concern of the welfare of this child and attempted to justify his behavior to [the probation officer] by saying he loved [the victim] and was unable to make good decisions due to his drug and alcohol use.

S.M. provided a letter to the court in which she asked the court to impose the maximum sentence available.

During the December 5, 2017, sentencing hearing, petitioner agreed that the information in the PSI was accurate.[1] The State argued to the circuit court that petitioner had a long relationship with a minor that began when she was just eleven years old, he knew what he was doing was wrong, and he did not always accept responsibility for his conduct. The State, therefore, asked the court to sentence petitioner to not less than fifteen nor more than seventy-five years of incarceration. Petitioner's counsel, however, requested alternative sentencing, arguing that petitioner was immature for his age and referred to his relationship with S.M. as "an affair." He pointed out that one of the evaluators found that petitioner might be amenable to out-patient therapy so the court could consider "any form of alternative sentencing." Petitioner requested that he be sentenced to probation and granted permission to return to Maine. Petitioner further argued that the reports submitted to the court contained "implicit bias" and that such implicit bias existed "in the parole officer of the State of West Virginia" because sex offenders rarely, if ever, receive

---

[1] In his reply brief, petitioner asserts that he was not provided with the sealed letters from S.M. and her mother so he could not agree to the information contained in those letters.

parole. In rebuttal, the State argued the following:

> I would note serious – [petitioner's counsel] says, it's implicit bias, we have very much implicit bias in all the reports that have been submitted to you. Any advice by the defense would be that they are all based upon [petitioner's] interpretation of the facts. Specifically, if you will note that his sexual contact came as the relationship grew, but it was not the foundation of the relationship, was unlikely to occur again in the future. The relationship that he had was sexual from the beginning. It was sexual in January of 2015, in February of 2015, and in March of 2015, when she was eleven (11) years old. The relationship began that January and was sexual all the way through. The reports are implicitly biased upon [petitioner's] interpretations of what he's willing to state the relationship was. The facts are though he pr[e]yed upon a young child. Also, they said that it's not likely to occur again. Well, it is likely to occur again. When he left and he fled to Maine. He didn't – he actually continued to engage in conversations with minor children that were – that is very concerning. Specifically, in discovery we were able to obtain his Facebook records and in his Facebook records, he contacted another female, who would have been a witness in this case. And her initials or her first name is Emma and talked to her about his relationship with – with the victim and. [sic] And he also asked her request [sic] that she snapchat with him and asked where do you live. This is a sexual predator. This is someone who will repeat this. These are concerns the State has and this [sic] some of the things that the [c]ourt should be very concerned about. These are the most serious crimes that we have in our state and we would ask that the a [sic] serious sentence be imposed to protect not only this State but also Maine.

In considering those arguments, the circuit court stated that it had "to not only consider [petitioner] and his background and his evaluation but also the effect that these offenses had on the alleged victim. And you are dealing with an eleven (11) year old child and that's a very young age, eleven (11), twelve (12) years old. They are not mature." The circuit court sentenced petitioner to an aggregate sentence of not less than fifteen nor more than seventy-five years of incarceration by order entered on April 3, 2018. In addition, petitioner was sentenced to forty years of supervised release and was ordered to register as a sex offender for life.

On October 2, 2020, the circuit court entered a resentencing order for purposes of appeal; it incorporated its findings of fact and conclusions of law from the April 3, 2018, order into the new sentencing order. However, during the August 12, 2020, hearing regarding the resentencing motion, petitioner argued that the State breached the terms of the plea agreement. During that hearing, the court explained

> This is a resentencing[]. Just for the purposes of perfecting an appeal . . . I've looked at the case law and particularly find that under *Adkins v. Leverette*, a 1980 case, that there is no reason[] to deny [petitioner] that resentence. And I am going to allow him to be resentenced. But the purpose of that resentence is to specifically start a new appeal period and to afford him an opportunity to perfect his right to appeal.

3

Petitioner appeals from the October 2, 2020, resentencing order.

> In syllabus point one of *State v. Wilson*, 237 W.Va. 288, 787 S.E.2d 559 (2016), this Court explained the standard of review for matters involving an alleged breach of a plea agreement:
>
>> "'Cases involving plea agreements allegedly breached by either the prosecution or the circuit court present two separate issues for appellate consideration: one factual and the other legal. First, the factual findings that undergird a circuit court's ultimate determination are reviewed only for clear error. These are the factual questions as to what the terms of the agreement were and what was the conduct of the defendant, prosecution, and the circuit court. If disputed, the factual questions are to be resolved initially by the circuit court, and these factual determinations are reviewed under the clearly erroneous standard. Second, in contrast, the circuit court's articulation and application of legal principles is scrutinized under a less deferential standard. It is a legal question whether specific conduct complained about breached the plea agreement. Therefore, whether the disputed conduct constitutes a breach is a question of law that is reviewed de novo.' Syl. Pt. 1, *State ex rel. Brewer v. Starcher*, 195 W.Va. 185, 465 S.E.2d 185 (1995)." Syllabus point 1, *State v. Shrader*, 234 W.Va. 381, 765 S.E.2d 270 (2014).

*State v. Blacka*, 240 W. Va. 657, 660, 815 S.E.2d 28, 31 (2018).

On appeal, petitioner sets forth two assignments of error: (1) the circuit court erred by refusing to acknowledge or rule on the objection to the State's breach of the plea agreement, the details of which are set forth below, made by petitioner's counsel at the sentencing hearing; and (2) under the United States and West Virginia Constitutions, the prosecutor violated petitioner's Fifth and Fourteenth Amendment rights when he breached the plea agreement.

With regard to petitioner's contention that the circuit court failed to rule on his objection to the State's breach of the plea agreement, petitioner asserts that during the resentencing hearing, petitioner's counsel objected to the State's breach of the plea agreement, arguing that the State's sentencing recommendation was inconsistent with the PSI. Petitioner argues that although the circuit court never made a definitive ruling, petitioner's objection has been preserved and is, therefore, reviewable by this Court.

In response, the State asserts that the circuit court did not err when it declined to rule on petitioner's objections to the State's alleged breach of the plea agreement because petitioner's resentencing was undertaken solely to restore his right to seek a direct appeal. Petitioner's sentencing hearing was held on December 5, 2017, and his counsel failed to file a direct appeal. Therefore, on October 2, 2020, petitioner was resentenced, at his request, for purposes of restoring his right to seek a direct appeal. During the subsequent hearing, petitioner's counsel asked that

petitioner be resentenced "for appellate purposes only." However, petitioner then attempted to challenge his underlying conviction by arguing that the State breached the plea agreement and requested that the sentences be run concurrently. The State argues that the circuit court declined to entertain such a claim because it went far beyond the very limited purpose of the resentencing hearing. As the circuit court stated during that hearing, it had not reviewed any information from the case relevant to any breach of the plea agreement and that such a claim fell outside of the limited purpose of the proceeding. The State also explained that it was caught off guard by petitioner's unexpected challenge, as it understood the purpose of the hearing to be a resentencing purely for purposes of appeal. We agree with the State.

> This Court has found that
>
> > "[o]ne convicted of a crime is entitled to the right to appeal that conviction and where he is denied his right to appeal such denial constitutes a violation of the due process clauses of the state and federal constitutions and renders any sentence imposed by reason of the conviction void and unenforceable." Syllabus, *State ex rel. Bratcher v. Cooke*, 155 W.Va. 850, 188 S.E.2d 769 (1972). . . . Where the state has not been extraordinarily derelict in its duty to afford the defendant an opportunity to appeal his conviction, such defendant may be resentenced and a new appeal period begun so as to afford him an opportunity to appeal. *See Johnson v. McKenzie*, [160] W.Va. [385], 235 S.E.2d 138 (1977).

*Adkins v. Leverette*, 164 W. Va. 377, 383, 264 S.E.2d 154, 157 (1980). As petitioner's counsel set forth during the resentencing hearing, "[w]e would ask that the [c]ourt just resentence him for appellate purposes only." In addressing the "other issue" of the alleged breach of the plea agreement, petitioner's counsel stated that she was "willing to [follow] that up with a written motion following [the resentencing] hearing." After some back and forth, the circuit court expressed its understanding that

> the very purpose of this is to give an appeal right. Not to insert more error or potential error that was done from before. If I let you come in and argue sentencing again, not just for purposes of appeal, to be resentenced, the [S]tate could fix that. And then the question would be is there even an error there to make an appeal on. I don't think we get to any of that here today. And I am just going to simply resentence [petitioner] as he was sentenced before for purposes of giving him his opportunity to exercise his appeal right.

Further, when the circuit court inquired as to whether petitioner had any objection to the court's position, petitioner's counsel responded, "No objection, Your Honor." The docket sheet provided to this Court does not show that petitioner's counsel filed any type of motion or memorandum following that hearing. In addition, petitioner did not cite any law that permits the circuit court to essentially reopen arguments related to sentencing when the sole purpose of the hearing was resentencing to allow petitioner to appeal. Due to the fact that the circuit court resentenced petitioner, as required, in order to afford petitioner his right to appeal; petitioner's counsel requested during the hearing that petitioner be resentenced for purposes of appeal; and petitioner's counsel informed the circuit court that she had no objection to the circuit court's position that the

hearing was specifically for purposes of resentencing,[2] we find that the circuit court did not err in implicitly denying petitioner's additional motion.

Petitioner's second assignment of error boils down to the merits of the argument he sought to present to the circuit court during the resentencing hearing – the alleged breach of the plea agreement by the State. Petitioner argues that the State undermined the plea agreement by making characterizations of petitioner that were not supported by the PSI. Petitioner is critical of the prosecutor's comments accusing petitioner of attempting to flee the state to evade arrest; alluding to an unidentified second victim without evidence; and suggesting that the PSI contained implicit bias against the State in favor of petitioner. He admits that the State's recommendation is not binding on the lower court but asserts that the State should not be permitted to use that technicality as a guise for a prosecutor's misconduct at the sentencing hearing. Petitioner asserts that both parties entered into the plea agreement expecting to reap the rewards from the sentencing recommendation clause – petitioner expected to obtain the benefits of a favorable PSI, as he had no prior criminal history and was not classified as a predator in the psychological evaluations. He argues that the State did not object to the PSI, instead expressing opinions outside the scope of the PSI, which undermined the plea and proffered the prosecutor's personal opinion of petitioner instead of what the PSI revealed.

To evaluate whether a plea agreement has been breached by the State, the terms of the plea agreement itself are "subject to principles of contract law insofar as its application insures a defendant receives that to which he is reasonably entitled." *State v. Wilson*, 237 W. Va. 288, 293, 787 S.E.2d 559, 564 (2016) (quoting *State ex rel. Brewer v. Starcher*, 195 W. Va. 185, 192, 465 S.E.2d 182, 192 (1995)). While ambiguities in a plea agreement will be construed against the State, "a plea agreement should be read reasonably, without resort to strained or hyper-technical interpretation." *Wilson* at 293, 787 S.E.2d at 564. Further, a petitioner seeking relief based upon such a claim must establish that the alleged violation contributed to the sentence imposed by the court. *Id.* at 294, 787 S.E.2d at 565. Here, paragraph 7 of the plea agreement provides that "[t]he State shall make a recommendation based upon the [PSI]." Contrary to petitioner's argument, this Court has issued several opinions addressing alleged breaches of plea agreements based upon comments made by the State during sentencing. *See, e.g., Wilson*; *Blacka*.

In the PSI, the probation officer recommended that the circuit court impose "the maximum penalty allowed in this case, 15-75 years in the penitentiary." Her recommendation was based on the fact that petitioner "began priming and manipulating his victim at the age of 11. The sexual relationship began just prior to her 12th birthday." She also informed the circuit court therein that petitioner "showed no concern for the welfare of this child and attempted to justify his behavior to [the probation officer] by saying he loved [the victim]" and that petitioner "showed deviance in his ability to manipulate all involved, mainly the victim, an 11 year old child." In the PSI, the probation officer indicated that petitioner accepted responsibility for his actions but blamed those actions on his use of drugs and alcohol. During the original sentencing hearing, petitioner's counsel

---

[2] The requirement that a party raise or waive an objection is designed "to prevent a party from obtaining an unfair advantage by failing to give the trial court an opportunity to rule on the objection and thereby correct potential error." *Wimer v. Hinkle*, 180 W. Va. 660, 663, 379 S.E.2d 383, 386 (1989).

highlighted the favorable portions of the psychological evaluations.

Before imposing sentence, the circuit court stated

[M]y question is should there be some punishment even though he may be a low to moderate risk to re-offend that there would be punishment for what . . . occurred here. What he plead to. Not what he didn't do to which those charges were dismissed. Again, he was facing much more serious exposure had this plea agreement not been entered into . . . . The [c]ourt has to not only consider [petitioner] and his background and his evaluation but also the effect that these offenses had on the alleged victim. And you are dealing with an eleven (11) year old child and that's a very young age, eleven (11), twelve (12) years old. They are not very mature . . . . It's going to have serious effects on the victim the rest of her life. So she is going to be paying consequences as the result of [petitioner's] conduct as well.

It appears from those comments that the circuit court properly considered the victim's criminal actions, which were undisputed, and the impact upon the victim, who requested that petitioner receive the maximum sentence. The court obviously focused on the victim's young age, as well. Because the State recommended the same sentence recommended by the probation officer and requested by the victim and the State's recommendation was not contrary to the PSI, we find that the State did not breach the plea agreement.

Affirmed.

**ISSUED:** September 27, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton